Pomeroy, *Appellant*, v. Fullerton.

Division One, December 11, 1895.

1.  Specific Performance : EVIDENCE : AGENT.   In  an  action  for  the specific performance  of  a  contract  for  the  sale  of  land,  the  trial  court properly  excluded  evidence  of  statements  made  after  the  execution of  the  contract  by  one  who,  before  its  execution,  acted  as  an  intermediary  between  the  parties,  in  the  absence  of  evidence  that  he  was the  agent  of  either  party  after  the  contract  was  executed.

2.  ——.   The  specific  performance  of  a  contract  is  not  a  matter of absolute  right  but  is  one  for  the  sound  discretion  of  the  court,  and will  be  refused  where  it  would  be  inequitable  under  all the  circumstances.

3. ————: CASE ADJUDGED. A vendee after seven years, during which time no demand was made for the performance of the contract and the land greatly increased in value and without any offer on his part to refund moneys paid out by the vendor for taxes and improvements, *held* not entitled to specific performance.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Thos. B. Crews* and *Hough & Hough* for appellant.

(1) The contract was one for a marketable and indefeasible title, and for a good and sufficient deed to the same. The written contract is inconsistent with and contradicts defendant's testimony on the trial, that Reveley knew at the time the contract was made there was a cloud on the title and was willing to accept a deed to the land notwithstanding such cloud. *Lucket v. Williamson*, 31 Mo. 54; Rawle on Covenants [3 Ed.], p. 562, note 4, and p. 565; *Mitchner v. Holmes*, 117 Mo. *loc. cit.* 205. Besides, it is wholly improbable that Reveley, or his assigns, would have contracted to erect buildings on real estate held under a doubtful title. (2) The discovery by Reveley of the cloud on the title after the execution of the contract excused him and his assigns from performance, or tender of performance, until the cloud was removed and defendant could make him a good title. *Mastin v. Grimes*, 88 Mo. 478; *Melton v. Smith*, 65 Mo. 315; *Snyder v. Spaulding*, 57 Ill. 480. (3) The retention of the purchase money by defendant and of the contract by Reveley, and the assignment of said contract in 1884 by Reveley to plaintiff, are uncontroverted facts which disprove the claim that the contract was either rescinded, or abandoned, in 1883, and these facts are corroborated by testimony for the plaintiff, and by the

admission of the defendant that something may have
been done by him on account of the contract to remove
the cloud from the title, as he needed the money very
much.  *Snyder v. Spaulding*, 57 Ill. 480; *Melton v.
Smith*, 65 Mo. 315; *Pratt v. Morrow*, 45 Mo. 405;
*Chouteau v. Iron Works*, 83 Mo. 73.  (4)  The exist-
ence of the cloud upon the title deprived the defendant
of any right to rescind the contract until the removal
of the cloud, and the retention of the purchase money
after the removal of said cloud, and his failure to
attempt a rescission of the contract after removal of said
cloud, constitute a continued and continuing affirm-
ance of the existence of said contract.  *Melton v. Smith*,
65 Mo. 315; *Mastin v. Grimes*, 88 Mo. 489.  (5)
Plaintiff has been guilty of no such delay as constitutes
laches in this case.  Defendant made no offer to return
the purchase money even at the trial, and still retains
it.  He can not continue to hold the money and yet
plead laches.  Such a position on the part of defend-
ant constitutes an actual fraud upon the plaintiff, and
a court of equity will not assist him in perpetrating
such fraud.  *Melton v. Smith*, 65 Mo. 315; *Mastin v.
Grimes*, 88 Mo. 478; *Snyder v. Spaulding*, 57 Ill. 480;
12 Am. and Eng. Encyclopedia of Law, p. 544, note 4;
*Cramer v. McSwords*, 24 W. Va. 594.  (6)  There is
sufficient proof of tender before suit in this case, but
tender need not be made before suit, especially when
delivery of the deed and payment of the purchase
money are to be concurrent acts.  Nor is tender neces-
sary where defendant avows, as in this case, that he
would not have received the money had the same been
tendered.  *Atkinson v. Hudson*, 44 Ark. 192; *Boyce v.
Francis*, 56 Miss. 573; *Johnson v. Sukeley*, 2 McLean
(U. S.) 562; *Railroad v. Cox*, 76 Iowa, 306; *Mitchell
v. Long*, 5 Litt. (Ky.) 71; *Webster v. French*, 11 Ill.
254; *Anderson v. White*, 27 Ill. 57; *Mastin v. Grimes*,

98 Mo. 489; *Deichman v. Deichman*, 49 Mo. 107; *McLeod v. Snyder*, 110 Mo. 298. (7) Defendant contracted to convey a good title. He accepted the part purchase money knowing of the cloud on the title, and when the vendee was ignorant of the defect of title. His acceptance of the money was in bad faith, and, as he has at no time offered to return it, his equitable defenses, if he has any, are not entitled to any consideration at the hands of a court of equity. The retention of the purchase money and failure to offer to return it, even at the trial, is an affirmance of the contract and a waiver of all such alleged defenses. (8) The court erred in excluding the testimony of plaintiff's witnesses as to the acts of Logan and his connection with the transaction. What Logan did and his connection with the sale and the removal of the cloud from the title of the property sold constituted physical facts in the case from which an inference could be legitimately drawn as to his agency for the defendant, Fullerton, Logan being dead at the time of the trial. 2 Greenl. Evid. [6 Ed.] p. 56, section 63; *Robinson v. Walton*, 58 Mo. 380; *Hull v. Jones*, 69 Mo. 587; *Peck v. Ritchie*, 66 Mo. 114.

*Henry M. Post* for respondent.

(1) There is no evidence of respondent's alleged agreement to extend the time for the performance by appellant or his assignor of his part of the contract. (2) Neither appellant nor his assignor ever made a tender or demand of performance. (3) The contract was incomplete and, therefore, not enforcible in equity. *Brown v. Finney*, 53 Pa. St. 373; *Strange v. Crowley*, 91 Mo. 294, 295; Fry, Spec. Perf., secs. 106, 107; *Taylor v. Van Schrader*, 107 Mo. 225; Waterman, Spec. Perf., sec. 141; *Bentz v. Eubanks*, 41 Kan. 28; *Ford v. Geb-*

*hardt*, 114 Mo. 298.   (4) The contract was uncertain
and, therefore, not enforcible.   See authorities cited,
*supra*; also, Waterman, Spec. Perf., secs. 144, 149; *Col-
son v. Thompson*, 2 Wheat. (U. S.) 536; *Martin v.
Halley*, 61 Mo. 196; *Paris v. Halley*, 61 Mo. 453;
*Cherlonier v. Cherbonier*, 108 Mo. 263; *Wistar's Ap-
peal*, 80 Pa. St. 484; 2 Story, Eq. [13 Ed.], sec. 736;
*Louthan v. Stillwell*, 73 Mo. 492; *Foster v. Kimmons*,
54 Mo. 488; *Rogers v. Wolf*, 104 Mo. 9; *Emmel v.
Hayes*, 102 Mo. 195.   (5) The pendency of litigation
was not a sufficient excuse and appellant waited too
long after its termination.   *Mastin v. Grimes*, 88 Mo.
478; *Atkinson v. Taylor*, 34 Mo. App. 452; *Vreeland
v. Blauvelt*, 23 N. J. Eq. 483.   (6) Time was of the
essence of the contract.   *Barnard v. Lee*, 97 Mass. 92;
*Cartmel v. Newton*, 79 Ind. 1; *Shuffelton v. Jenkins*, 1
Morris (Iowa), 427; *Jones v. Noble*, 3 Bush (Ky.),
694; *Haggerty v. Elyton Land Co.*, 89 Ala. 428; *Stem-
bridge v. Stembridge*, 87 Ky. 91; *Pratt v. Carroll*, 8
Cranch, 471; *Kelsey v. Crowther*, 27 Pac. Rep. 695;
*Edwards v. Atkinson*, 14 Tex. 373; *Taylor v. Long-
worth*, 14 Peters, 172.   (7) The contract was not
enforcible against respondent for lack of mutuality.
Waterman, Spec. Perf., sec. 196; *Glass v. Rowe*, 103
Mo. 539; *Ramsey v. West*, 31 Mo. App. 676; *Warren v.
Costello*, 109 Mo. 343; *Mastin v. Grimes*, 88 Mo. 478;
*Marble Co. v. Ripley*, 10 Wall. 359; *Mastin v. Halley*,
61 Mo. 195; *Chicago, etc., Railroad Co. v. Wisconsin,
etc., Railroad Co.*, 76 Iowa, 615; *Walton v. Coulson*, 1
McLean (U. S.), 120; *Shuffelton v. Jenkins*, 1 Morris
(Iowa), 427; *Jones v. Noble*, 3 Bush (Ky.), 697.   (8)
The opinion in *Melton v. Smith*, 65 Mo. 315, does not
sustain appellant's position.   (9) The case of *Mastin
v. Grimes*, 88 Mo. 478, does not sustain appellant's
contention.   *Lanitz v. King*, 93 Mo. 513; *Atkinson v.
Taylor*, 34 Mo. App. 442.   (10) The case of *Snyder v.*

*Spaulding*, 57 Ill. 480, does not sustain appellant's position. *Fish v. Lightner*, 44 Mo. 272; 2 Story's Eq. Jur. [13 Ed.], sec. 742; *Taylor v. Williams*, 45 Mo. 83; *Chouteau v. Railroad*, 22 Mo. App. 298; *Paris v. Halley*, 61 Mo. 461. (11) The retention by respondent of the earnest money did not give appellant a continuing right to demand specific performance. *Melton v. Smith, supra; Taylor v. Williams, supra; Mastin v. Halley, supra; Glass v. Rowe, supra; Burlock v. Adams*, 20 N. J. Eq. 367; *Roby v. Garnett*, 78 Ill. 638. (12) Logan's acts or declarations were not binding on respondent. (13) The increase in value clearly appeared from the evidence, and was such as to make it improper for the court to grant appellant's prayer. *Merritt v. Brown*, 19 N. J. Eq. 286; *Ely v. McKay*, 12 Allen (Mass.), 323; *Penrose v. Leeds*, 46 N. J. Eq. 294; *Chicago, etc., Railroad v. Stewart*, 19 Fed. Rep. 5; *Callen v. Ferguson*, 29 Pa. St. 247; *Maddox v. McQuean*, 3 A. K. Marshall, 400; Waterman, Spec. Perf., secs. 470, 475. (14) The claim was too stale to be enforcible. *Southcomb v. Bishop of Exeter*, 6 Hare, 213; Waterman, Spec. Perf., sec. 469; *Rogers v. Sanders*, 16 Maine, 92; *Milward v. Thanet*, 5 Ves. Jr. 720; *Hoyt v. Tuxbury*, 70 Ill. 331; *Cook v. Bean*, 17 Ind. 504; *Rector v. Price*, 1 Mo. 373. (15) The decree prayed for would not be equitable. *Willard v. Taylor*, 8 Wall. 565; *Mastin v. Halley*, 61 Mo. 202.

MACFARLANE, J.—The suit is in equity, to enforce the specific performance of the following contract:

"Received of M. P. Reveley, $100 on account of purchase money for a certain tract of land agreed to be sold to him on conditions below mentioned: Said tract commences at the intersection of the west line of Boyle avenue with the north line of McPherson avenue, thence runs about one thousand feet west with the

north line of McPherson avenue, to wit: to the east line of Newstead avenue prolonged, and having a depth northwardly of one hundred and forty-two feet, six inches to an alley to be dedicated, running east and west.

"The undersigned agrees to sell said tract to said Reveley at $20 per front foot, one fifth to be paid in cash and the balance in equal payments in one, two, three, and four years with interest at six per cent per annum, payable semiannually, said deferred payments to be secured by deed of trust on said real estate.

"And in consideration of the sale at $20 per front foot, which the undersigned considers far below the actual value of the property, the said Reveley for himself and assigns shall bind himself and them by deed that none of said property shall be used or sold for any manufacturing or trade purpose or for any horse car or livery stable. Also that he will improve said property erecting thereon dwelling houses suitable to the neighborhood, and that he shall commence the erection thereof within one year from this date and after commencing the same shall finish them with all reasonable dispatch. The deed to be made and delivered as soon as convenient to all parties—not later than the middle of May, 1883.                    J. S. FULLERTON."

The contract had indorsed thereon the following assignment: "For and in consideration of the sum of $100, in hand paid, I hereby assign, sell and set over to Wm. J. Pomeroy all of my right, title and interest in and to the within agreement.        M. P. REVELEY."

This assignment was duly acknowledged by Reveley May 9, 1884. There was also indorsed on the contract a subsequent assignment by Reveley to plaintiff, which was dated and acknowledged April 19, 1890. The suit was commenced on the first day of May, 1890.

In a few days after the receipt was executed defend-

ant furnished Reveley with the form of a deed that would be required under the contract. The deed in its granting clause contained the words "grant, bargain and sell" and was subject to certain conditions therein specified. The third condition prohibited the erection, for twenty-five years, of buildings to be used in certain specified businesses. The second condition required the grantee and his assigns within one year "from the date of this deed to commence to erect houses upon said premises, to be built of brick or stone or brick and stone of good substantial character and condition, and shall complete the same within a reasonable time after they have been so commenced." The deed concluded with the following special warranty: "And the said parties of the first part do hereby covenant, promise and agree to and with said party of the second part, his heirs and assigns that they have not made, done, committed or suffered any act or acts, thing or things whatsoever whereby, or by means whereof the above mentioned and described premises, or any part thereof, now or at any time hereafter, shall be impeached, charged or incumbered in any manner or way whatsoever arising from their acts, and will forever warrant and defend."

The execution of the receipt and furnishing the form of the deed were admitted on the trial.

By answer defendant denied the right to specific performance upon a number of grounds. Among these were included the following: Neglect and refusal of Reveley or his assigns to make the required payment on the purchase price; rescission of the contract by defendant after refusal of Reveley to perform; laches on the part of Reveley and his assigns to commence his suit; estoppel of Reveley and his assigns to claim under the contract; that a decree for specific performance would be inequitable under all the circumstances.

Plaintiff by reply undertook to excuse his nonperformance of the contract, and delay in commencing the suit, on the ground that, on investigation, it was disclosed that a suit was then pending which cast a cloud upon the title of the land, by reason of which defendant was unable to convey such a title as was required by the contract; and that defendant waived the provision of the contract which required its execution within a definite time.

The court after hearing the evidence found for defendant and dismissed the petition, and plaintiff appealed.

The negotiations which resulted in this contract were conducted through one C. C. Logan, who died before the trial.   Each party denied the authority of Logan to bind him by any act, declaration, or representation made in the course of the negotiations. The evidence did not show conclusively which party he represented, or by which he was employed.   Each party, according to his testimony on the trial, supposed that Logan represented the other.   They agree, however, that he acted as intermediary between the parties.   All proposals were carried from one party to the other by him, as well as the written contract, the form of deed, and the earnest money paid.   As all negotiations were merged in these final acts it can make but little difference which party he represented. Indeed, he may have been a mere messenger representing neither, except in the matter of carrying messages.   But each party relied upon subsequent acts and declarations of Logan to bind the other.   These were not admitted by the court, on the ground that the agency had not been proved.

We think the ruling of the court correct in excluding such evidence, for, though the circumstances may have been sufficient to prove that Logan, during

the negotiations, represented one or the other of the parties, there was nothing to show that the agency was of a more general character than was evidenced by what he did and said during the negotiations. For all that appears, the agency was ended when the contract was agreed upon. He had no power thereafter to bind defendant by any waiver; nor was notice given to him by defendant, rescinding the contract, binding upon plaintiff.

On some questions the evidence was quite conflicting, but the material facts are well established. These we will state without undertaking to recapitulate the evidence.

Sometime previous to this transaction defendant had purchased a large tract of land in the suburbs of the city of St. Louis, of which that in question is a part, for which he agreed to pay the sum of $80,000. A part of the purchase price was about maturing and defendant was much in need of money to meet these obligations. The land in question was at the time worth more than under the contract plaintiff agreed to pay for it. Defendant agreed verbally with plaintiff to take $18.50 per front foot if paid in cash. We think there can be no doubt that Reveley was fully advised of defendant's pressing need of money. M. P. Reveley and W. F. Brink were real estate agents occupying the same office in St. Louis. Brink wished to purchase this property, having in view its immediate sale to a third party. He believed he could sell to this party for cash. With these objects in view, and influenced by these considerations, the contract was made, and the copy of the deed explanatory thereof was furnished. Brink was the real purchaser, though the contract was made in the name of Reveley.

At this time there was pending in this court a suit over some matter which cast a cloud upon the title.

This suit had been decided by the court of appeals in favor of the title of defendant in December, 1882, and had been appealed. Whether Reveley or Brink was advised of the pendency of this suit when they made the contract, the evidence is conflicting. However that may be the party to whom Brink expected to sell learned of the fact and refused to purchase while that cloud remained. Some efforts were made by Brink to compromise the suit but defendant refused to accept the terms proposed. It was not shown that these efforts to compromise extended beyond May 25, 1883, the date fixed by the contract for paying the purchase price and making the deeds. Nothing passed between these parties after that until within a few days next before commencing this suit, except that defendant testified that Reveley told him that he was unable to comply with the contract on account of inability to raise the money. This Reveley denied. The pending case was decided by this court in favor of defendant's title, and the mandate was filed in the circuit court in December, 1886. Defendant admitted having notice of the result in 1887.

At the time the contract was made the real estate market in St. Louis was much depressed and so continued until about 1888. From that time on the appreciation in value was very marked, and at the trial of this case the land in question was worth four times what it was in 1883. Streets had been put through the property. These streets had been paved with asphaltum, sidewalks had been laid and sewers constructed. Defendant testified, and in that he was not contradicted, that he had expended at least $30,000 in improvements. It is true he testified that the street improvements were not commenced until about 1890. It does not appear that plaintiff or his assignor paid taxes either general or special on the land, ex-

pended any money in its improvement, or did any act indicating claim or ownership from the date of the contract to the commencement of this suit. Under these circumstances, is plaintiff entitled to the equitable relief demanded?

Courts of equity will refuse to decree specific performance of a contract when to do so would be plainly inequitable and unjust. In the early case of *Taylor v. Longworth*, 14 Pet. 172, *loc. cit.* 174, it was said by Mr. Justice STORY: "In the first place, there is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate period been a material change of circumstances affecting the rights, interests, or obligations of the parties, in all such cases courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust." In the case of *Holgate v. Eaton*, 116 U. S. 40, Mr. Justice MILLER declares this language to have become a legal maxim in this class of cases.

It is the well settled law in this state and elsewhere that the specific execution of a contract in equity is a matter, not of absolute right in the party, but of sound discretion in the court, and will be denied "in any cases where such a decree would be inequitable under all circumstances." *Veth v. Gierth*, 92 Mo. 104; Story's Eq. Jur., sec. 742; *Fish v. Lightner*, 44 Mo. 272; *Taylor v. Williams*, 45 Mo. 83.

We are well satisfied from the terms of the contract, which required performance by the vendee "not later than May 25," and the circumstances under which it was made, that the vendor intended to make the time of performance an essential part of the contract.  We are furthermore satisfied that the vendee expected to be prepared to carry out the contract by the time specified and would have been perfectly willing to make time an essence of the contract.  He must have known defendant's urgent need for money, from the low price at which he offered the land and the large discount he was willing to make for cash.  A consideration of all these facts and circumstances convinces us that the parties intended to make the time of performance not only a material, but an essential, part of the contract.

There was no substantial proof of a waiver of any of the terms of the contract, but plaintiff claims that the delay was not through any fault of his or his assignor, but was caused by inability on the part of defendant to make a good title to the land.  Defendant testified that Reveley was fully advised of the condition of the title when he made the contract, and understood that he was to take such title only as defendant could make.  Both Reveley and Brink denied any knowledge of the cloud on the title when they purchased.  The form of the deed, being one of special warranty only, tends to corroborate defendant's testimony.

Moreover, from the twenty-fifth of May, 1883, to within a few days of the commencement of this suit, neither party demanded performance of the contract of the other.  So far as appears defendant continued to manage and control the property and to pay the taxes and other public charges upon it.  Thus a rescission of the contract by the parties may well be inferred from

their conduct, notwithstanding the excuse a cloud upon the title afforded for delay.

We are not satisfied that the cloud upon the title in the circumstances justified a delay beyond the stipulated time. But certainly, in all the circumstances, the terms of the contract, the increasing value of the land, the improvement of streets and construction of sewers through it, demanded prompt action on the part of plaintiff in asserting his claim, after the cloud had been removed.

It is true the public improvements may not have been completed when the suit was commenced, but when completed they became a charge upon the land which defendant was bound to remove in order to protect the property. Plaintiff failed to show that he had made an offer to pay these charges or to refund the amount defendant had paid.

It has been said, in discussing the discretion a court of equity may use in such cases: "No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties." *Willard v. Tayloe*, 8 Wall. *loc. cit.* 567.

The delay in applying for relief may not be, of itself, sufficient grounds upon which to deny granting it, but that, coupled with all circumstances, makes a case in which it would be most inequitable and unjust to require defendant to specifically perform the contract. The relief was, therefore, properly denied by the learned circuit judge, and the judgment is affirmed. BRACE, C. J., and ROBINSON, J., concur. BARCLAY, J., does not sit.