OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM 1899.

*(Continued from Volume 155.)*

### SHINKLE, Appellant, v. VICKERY.

#### Division One, March 30, 1900.

1. **Pledge:** CORPORATE STOCK: RIGHT TO REDEEM: CASE STATED. G sold and conveyed to V by deed of general warranty a tract of mortgaged land, under an agreement to accept in part payment a certificate of stock in an incorporated company, and to buy the land back at a stated price if V at the end of one year should be dissatisfied with his bargain. As part of the same transaction G borrowed from V a sum of money with which he discharged the mortgage on the land, giving V his note for the amount and agreeing that V should retain the certificate of stock as collateral security for the payment of said note. V then executed and delivered to G a writing binding himself to transfer and deliver said stock certificate to G, or his assigns, upon payment of said note; which writing was assigned by G to E, and by E to S. Meanwhile, and before the expiration of one year from the date of his purchase of the land, V elected to rescind the transaction, tendering G a deed to the land, and demanding a settlement, which G refused. In an action by S to compel V to accept the amount of G's note and to transfer said certificate of stock to S, *held*, that plaintiff was not entitled to redeem, and that his bill was properly dismissed.

2. **Equity:** DECREE FOR SPECIFIC PERFORMANCE: JUDICIAL DISCRETION. A decree for specific performance is not granted as an absolute right, but rests in the sound discretion of the court. It will only be granted where it would be equitable.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*George W. Taussig, John E. Bishop* and *Hugh D. Mc-Corkle* for appellant.

(1) Under the pleadings and evidence it was error to dismiss the bill. The utmost that defendant was entitled to under the answer and evidence was a decree, adding to the $10,000 debt any damages suffered from Gibson's breach of contract before plaintiff could have the stock certificate transferred to him. (2) This being an action for recovery of specific personal property, in its nature an equitable replevin, the only question that could be tried, in the absence of a money demand by plaintiff, was the right to the possession of the stock certificate, that is, whether or not the pledge to Vickery was extinguished. Workman v. Warder, 28 Mo. App. 1; Sherwood v. Neal, 41 Mo. App. 416. (3) The contract out of which defendant's counter-claim arose, if at all, was not connected with the "subject of plaintiff's action," nor did it arise out of the contract or transaction out of which plaintiff's action arose. Hence, it was not a proper subject of counter-claim as against plaintiff, an assignee without notice. Gallup v. Albany Ry. Co., 7 Lans. 471; Edgerton v. Page, 20 N. Y. 281. (4) The claim, under the land contract, was not an existing equity at the time of the assignment of the equity in the stock by Gibson to plaintiff, and hence can not affect plaintiff, an assignee without notice and for value. Smith v. Ashby, 20 Mo. 354; Paston v. Bussmeyer,

28 Mo. 330; McNeil v. Hill, 1 Woolworth 96; Bobb v. Taylor, 56 Mo. 311.　(5)　The title of Shinkle, a *bona fide* purchaser for value, of a non-negotiable chose in action, purchased from Gibson, or Engel, having an apparent title, can not be contested by Vickery, who has, himself conferred such apparent title upon the vendor, Shinkle, the buyer having no notice of equities.　As to such a purchaser, or assignee, the vendor (Vickery), is estopped to interpose a claim of equities, or secret lien, existing in his favor.　Fugate v. Hansford, 3 Litt. (Ky.) 262; Kemp v. McPherson, 7 Har. & J. 320; Cochran v. Stewart, 21 Minn. 435; Clarke v. Roberts, 25 Hun. 86; s. c. 90 N. Y. 652; Combes v. Chandler, 33 Oh. St. 178; Moore v. Holcombe, 3 Leigh, 597; Hall v. Parnell, 2 Md. Ch. 137; McNeil v. Hill, 1 Woolworth, 96; Riley v. Vaughn, 116 Mo. 169; Taylor Com. Co. v. Bell, 62 Ark. 26; Mernich v. Shaffer, 34 N. E. Rep. 987; Porter v. Gable, 88 Ia. 565; Swartz v. McClelland, 31 Neb. 646; Humes v. Scruggs, 94 U. S. 327; State v. Frame, 112 Mo. 502; Pullian v. Burlingame, 81 Mo. 111; Guffey v. O'Reilly, 88 Mo. 418; Lee v. Turner, 89 Mo. 489; Boles v. Bennington, 136 Mo. 522; Sherwood v. Neal, 41 Mo. App. 416; Camp v. Railroad, 62 Mo. App. 85; Longworth v. Aslin, 106 Mo, 155; Taylor v. Elliot, 32 Mo. 172; Swallow v. Duncan, 18 Mo. App. 622; Central Bank v. Garrison, 2 Mo. App. 58.　(6)　Shinkle, in his contract with Gibson, having agreed to pay the debt of $10,000 due from Gibson to Vickery, became liable directly to Vickery, and it is immaterial that Vickery was not a party to the agreement between Gibson and Shinkle.　Fitzgerald v. Barker, 70 Mo. 685; s. c. 85 Mo. 13; State v. Railroad, 125 Mo. 596; Heim v. Vogel, 69 Mo. 529; Wayman v. Jones, 58 Mo. App. 313; Nelson v. Brown, 140 Mo. 580; Commercial Bank v. Wood, 56 Mo. App. 214; Parks v. Clark, 2 N. Y. 329; Dingeldein v. Railroad, 37 N. Y. 575; Winn v. Lippencott, 125 Mo. 545.　(7)　Vickery has no cause of action, even against Gibson, based upon the land contract.　His ten-

der in July, 1894, was illegal and insufficient. He demanded $33,920, in place of $32,000. He made no valid legal tender of the deed to Gibson. He failed to make a valid tender of the certificate of stock. Mellon v. Webster, 5 Mo. App. 449.

T. K. Skinker and C. R. Skinker for respondents.

(1) Shinkle is not entitled to maintain an action for this stock. Gibson alone, if anyone, can sue. (2) Under the Findlay lot contract, plaintiff's rights in respect to this stock, if any he had, ceased absolutely when Vickery refused to transfer and deliver it; and plaintiff has, now, no such interest in it as will enable him to maintain this suit. This contract gave plaintiff the right to have the stock if Vickery would deliver it to him, but it imposed on defendant no duty and gave him no right to sue for the stock. Reed v. Telegraph Co., 135 Mo. 675; Porter v. Brooks, 35 Cal. 203; Hardeman Co. v. Foard Co., 47 S. W. Rep. 33. (3) The plaintiff can not maintain this suit and is not entitled to equitable relief on the ground that he will sustain irreparable injury to his property or that he has no adequate remedy at law. Spitz v. Kerfoot, 42 Mo. App. 85; Damschroeder v. Thias, 51 Mo. 104; Weigel v. Walsh, 45 Mo. 560; Burgess v. Kattleman, 41 Mo. 480; James v. Dickson, 20 Mo. 79. (4) Plaintiff can not maintain this suit for the further reason that neither in his petition nor by his evidence has he made out a case for specific performance. His remedy, if he is entitled to any, is by an action for damages for non-delivery of the stock. Waterman, Spec. Perf., sec. 19; 22 Am. L. Reg. 500; 2 Beach on Contracts, sec. 955; 1 Spelling, Priv. Corp., sec. 500; Ferguson v. Paschall, 11 Mo. 270; Ross v. Railroad, Woolworth, 26; Noyes v. Marsh, 123 Mass. 286; Jones v. Newhall, 115 Mass, 244; Eckstein v. Downing, 64 N. H. 248; Foll's Appeal, 91 Pa. St. 434; De La Cuesta v.

Ins. Co., 136 Pa. St. 78; Edelman v. Latshaw, 159 Pa. St.
644; Bumgardner v. Leavitt, 35 W. Va. 194; Trust Co. v.
Markell, 61 Minn. 271; Avery v. Ryan, 74 Wis. 591.    (5)
Plaintiff can not maintain this suit either on the ground that
his interest in the stock is equitable, and is therefore a proper
subject of equitable cognizance.    Story on Bailments, sec.
350; Edwards on Bailments, sec. 316; Maryland Ins. Co. v.
Dalrymple, 25 Md. 242.   Or on the ground that the proceed-
ing is one to redeem a pledge.    Edwards on Bailments, secs.
230, 313, 314.    (6)    Plaintiff is a mere volunteer, having
paid nothing for the stock.    His conditional assumption to
pay Gibson's debt to Vickery does not make him a purchaser
for value.    Arnholt v. Hartwig, 73 Mo. 485; Dougherty v.
Cooper, 77 Mo. 528; Young v. Kellar, 94 Mo. 581; Stone v.
Welling, 14 Mich. 525; Matson v. Melchor, 42 Mich. 477.
As a volunteer he is entitled to no relief that would not be
adjudged to Gibson, and is subject to every defense that
could be made against Gibson.    Barnes v. McMullins, 78
Mo. 260; Wolff v. Matthews, 39 Mo. App. 376; Skinker v.
Smith, 48 Mo. App. 91; Utica Ins. Co. v. Power, 3 Paige,
367; Lillibridge v. Allen, 100 Ia. 582.

MARSHALL, J.—This is a bill in equity to compel the
specific performance of a contract with respect to shares of
stock in a private corporation.

Prior to July 16th, 1894, Russell B. Gibson and Albert
H. Engel (in the undivided proportions of three-fourths and
one-fourth, respectively) owned one hundred and twenty-
seven and ninety-seven one hundredths acres of land in St.
Louis county, and the defendant Vickery owned four hun-
dred and seventy shares of the capital stock of the Hemin-
gray Glass Company, of Covington, Ky., of the par value of
one hundred dollars per share.   Gibson and Vickery pro-
posed making an exchange of the respective real and personal
property.   Engel had acquired the interest in the land held

by him from Gibson for thirty-seven hundred dollars upon an agreement with Gibson that if Engel desired it, he, Gibson, would take it back within six months at forty-two hundred dollars. To enable Gibson to exchange the land with Vickery for his stock Engel reconveyed the one-fourth interest in the land held by him. Thereupon Gibson and Vickery agreed to make the exchange, Gibson valuing his land at $32,000. There was, however, a deed of trust on the land for ten thousand dollars, which had to be paid off in order that Gibson might give Vickery a clear title. Gibson was unable to raise the money to pay off this deed of trust, so at last it was arranged that Vickery should lend Gibson the ten thousand dollars, and take his collateral note therefor payable at six months, with six per cent interest from date, with the four hundred and seventy shares of stock pledged thereby to secure the payment of the note. This was done, and the exchange perfected, the deed of trust paid off and the note and collateral executed. But it was also agreed that, "if in one year from this date the said Vickery shall be dissatisfied with his said purchase of land, the said Gibson hereby binds himself to purchase said farm, either for himself or for another, and to pay therefor, or cause to be paid for same, the price of $250 per acre, or the sum of $32,000," and to secure this agreement Gibson agreed to convey to Vickery (the deed to be held in escrow by Samuel Cupples and Company, but in fact it was delivered to Vickery) three hundred and twenty acres of land in Christian county, valued at $7,500 (over a mortgage for $2,500 then on the land). It was further agreed that Vickery was, "to have the right, at any time during the year ending July 16th, 1895, to notify Gibson in writing that he is satisfied with the land, and in that event or in the event Vickery elected to rescind the exchange Vickery obligated himself to return to Gibson the deed to the Christian county land." During the year Gibson was to have the right to sell the land exchanged at not less than

$250 an acre, by paying Vickery the $32,000 with six per cent interest from the date of the exchange. Vickery never at any time indorsed or transferred the certificate of stock. At the time Gibson executed his collateral note to Vickery, the latter gave him the following document:

"St. Louis, Mo., July 24, 1894.

"Whereas, I have loaned to Russell B. Gibson the sum of ten thousand dollars, for which he has executed his note for the sum of that amount to me, due and payable six months after date, bearing date July 20th, 1894, and, whereas, said Gibson has deposited security to secure the payment of same 470 shares of the par value of $100 each of the capital stock of the Hemingray Glass Company of Covington, Ky.: Now, therefore, I, the undersigned Samuel Vickery, do hereby agree to turn over and deliver to said Gibson said 470 shares of stock upon the payment of said note for $10,000 by said Gibson or his assigns at the maturity of said note, or any other time previous that may be agreed upon."

Gibson paid Engel nothing when he transferred his one-fourth interest in the land, but on the 27th of July, 1894, Gibson paid Engel $1,200, on account of the $4,200 debt, and at the same time executed a note for $3,000 to cover the balance. Subsequently, Engel surrendered to Gibson this $3,000 note and took from Gibson in lieu of it an assignment of a one-fourth interest in the equity of redemption in the stock in the Hemingray Glass Co. The ten thousand dollar collateral note fell due on the 23d of January, 1895, and Gibson was unable to pay it, but he obtained Vickery's consent to renew it for six months on payment of $350, which was interest, in advance, at the rate of seven per cent. Gibson could not pay the $350, so he, on January 19th, 1895, assigned to Engel his entire interest in the equity of redemption in the stock, by a written instrument, viz.:

"For value received, I hereby assign, transfer and set

over unto Albert H. Engel, four hundred and seventy shares of stock in the Hemingray Glass Co., of Covington, Ky., of the par value of $100 per share, now held by Samuel Vickery, of Evansville, Ind., as collateral security for the payment of a loan of $10,000, dated July 20th, 1894, payable in six months, hereby warranting and defending the title to said stock against all encumbrance, except the said $10,000 above referred to.

(Seal.)                              R. B. Gibson.

"Dated, St. Louis, Mo., Jan. 19, 1895."

Thereupon Engel paid the $350 to the bank that held the collateral note, for the six months extension agreed upon by Vickery and Gibson, and gave the bank a copy of the assignment above set out. On January 29th, 1895, Engel wrote to Vickery that the $350 had been paid, and told him that Gibson had previously transferred to him his equity in the stock, subject to the $10,000, and asked if the bank had sent him the duplicate of the transfer. Vickery answered, under date of January 30th, and told Engel that he, Vickery, held other obligations of Gibson's which were to be performed by July 1st, and if performed and if the $10,000 evidenced by the note and secured by the stock was paid, he, Vickery, would transfer stock; otherwise he would dispose of the stock under the collateral note. Engel replied on January 31st, saying he knew nothing of the other transaction, and had taken the equity of redemption subject only to the $10,000 note. Vickery replied on February 1st explaining the terms of the exchange of the land for the stock, the loan of $10,000, and the giving of the collateral note and told Engel he had notified Gibson that he must take the land back by the first of July.

Thereafter and between the 1st and the 11th of February, 1895, Gibson went to Covington, Ky., and made an agreement with the plaintiff, Shinkle, to buy certain lots in Findlay, Ohio, for $50,500, of which the four hundred and

seventy shares of stock was to form a part, as stated in the agreement in this way:

"In consideration of the premises, Gibson agrees to pay Shinkle fifty thousand five hundred dollars ($50,500) in the following manner: To procure the transfer and delivery to Shinkle of four hundred and seventy (470) shares of the stock of the Hemingray Glass Company, at a valuation of fifty cents on the dollar of the par value of said stock, subject, however, to a lien for the sum of $10,000, now held by Samuel Vickery of Evansville, Indiana, which sum of $10,000, secured by the pledge of said stock, Shinkle agrees to pay. That is to say, Shinkle will pay the principal sum due said Vickery, and thereupon receive said stock as a credit of $13,500, upon the payment of the consideration above named. Said stock is now evidenced by one certificate, registered in the name of said Vickery.

"Inasmuch as Shinkle will have no record evidence of his title to said stock, until the amount owing said Vickery shall be paid and said certificate transferred to him (Shinkle), the assumption of the debt of $10,000 and his agreement to credit the agreed value of the stock, as aforesaid, *is made only upon the condition that said Vickery shall duly transfer and deliver said stock to Shinkle, upon the payment to him of said sum of $10,000.* The balance of said consideration, to-wit, $37,000, shall be paid in the manner hereinafter provided, and until paid shall bear interest at the rate of four per cent per annum."

Thereupon Gibson returned to St. Louis and on the 11th of February, 1895, procured Engel to transfer the equity of redemption in the stock to the plaintiff, by writing on the paper containing the assignment thereof from Gibson to him, Engel, the following: "For value received I hereby transfer and convey to Bradford Shinkle all my right, title and interest in and to the above stock, this 11th day of February, 1895," which Gibson forwarded to Shinkle. Neither Gibson

nor Shinkle paid Engel anything for this assignment. But afterwards on the 15th of February, 1895, Gibson paid Engel $1,000, on account of the $3,000 balance due him, and Gibson also paid Engel the $350, which Engel had paid to the bank for the extension of the $10,000 collateral note.

When plaintiff received the assignment from Engel, he caused his agents to notify Vickery, under date of February 16, 1895, that he held an "order of sale" for the stock, which he held as collateral security for $10,000, and offering to pay the $10,000, less unearned interest, but if Vickery preferred to hold it until the maturity of the note, directing him to return the "order of transfer," which was the transfer from Engel to Shinkle of February 11th, 1895.

Vickery replied, on February 18th that "he had other claims against Gibson for which I held that stock."

The notice from Vickery to Gibson electing to rescind the exchange and demanding that Gibson take back the land was dated January 30th, 1895, and specified that Gibson should do so by the first of July.

At the maturity of the collateral note, Vickery sent it to The National Bank of the Republic in St. Louis. He also sent the certificate of stock, but did not indorse or transfer it. He also sent a properly executed deed to the land in St. Louis county conveying the same to Gibson, and also sent the deed from Gibson to him for the Christian county land, and he directed the bank to turn them over to Gibson on payment of the sum of $33,920. At the maturity of the collateral note the plaintiff, Shinkle, tendered $10,000 to the bank and demanded the collateral note and the certificate of stock. The bank refused to accept the money or surrender the note or stock, and thereupon Shinkle instituted this suit in equity asking for an injunction against the bank returning the note and stock to Vickery, and praying leave to redeem the stock by paying the collateral note, and further asking that Vickery be compelled to indorse and transfer the certificate of

stock. The answer is a specific denial of the allegations of the petition, and a counterclaim for $15,000 damages growing out of the alleged breach of contract by Gibson in not taking the land back, and for $10,000 the loan evidenced by the collateral note. The answer also alleges and the proof sustains the allegation that at all the times stated, Gibson was insolvent. The proof shows that Vickery is solvent. The circuit court dismissed the plaintiff's bill, and the plaintiff appealed.

I.

The plaintiff's case is predicated upon the claim that he is a *bona fide* purchaser, for value and without notice, of the four hundred and seventy shares of stock in the Hemingray Glass Company, subject only to a pledge thereof to secure the payment of the ten thousand dollar note made by Gibson to Vickery, which note plaintiff offered, at its maturity, to pay and still offers to pay.

Briefly recapitulated the plaintiff's claim rests upon these facts: Gibson had sold to Engel an one-fourth interest in the land for $3,700, upon an agreement to take it back at $4,200, in six months, if Engel so demanded. To enable Gibson to convey a good title to Vickery, Engel reconveyed this interest to Gibson, nothing being paid Engel at the time. After Gibson sold to Vickery he paid Engel $1,200 on account of the $4,200 and gave Engel an assignment of an one-fourth interest in the equity of redemption in the shares of stock. When the ten thousand dollar note fell due and Vickery agreed with Gibson to extend the note for six months, on payment of three hundred and fifty dollars, Gibson was unable to pay that amount; so he assigned the entire equity of redemption to Engel, and he paid the $350. Engel then notified Vickery of the assignment to him, subject only to the $10,000 note for which the stock

was pledged as collateral, and Vickery at once asserted and explained the further claim he had to the stock growing out of the exchange of the land for the stock and of his right to rescind the trade within one year, which right he had exercised on the 30th of January, 1895. Thereupon Gibson made the deal with the plaintiff, in reference to the lots in Findlay, Ohio, whereby, as part of the $50,500 Gibson agreed to pay plaintiff it was agreed that the plaintiff should take the stock at fifty cents on the dollar of the par value of the stock, amounting to $23,500, of which $10,000 was to be paid to Vickery and $13,500 was to be credited on the $50,500, but this was to be done *only upon condition that Vickery should duly transfer and deliver the stock to Shinkle upon the payment to him of the $10,000*. Thereupon, on February 11th, 1895, Gibson procured Engel to assign the equity of redemption in the stock to Shinkle. Nothing was paid by any one to Engel for so doing. On the 15th of February Gibson refunded to Engel the $350 he had paid in January for the extension of the note, and about the same time Gibson paid Engel $1,000 on account of the balance he owed him.

This is the sum and substance of the facts upon which the plaintiff's claim rests that he is a *bona fide* purchaser, for value and without notice. The mere statement of the facts shows conclusively that the contention is wholly untenable. The plaintiff has paid nothing for the equity of redemption in the stock. Nor has he bound himself to pay anything, except on condition that Vickery transfers the stock to him upon the tender of the ten thousand dollars. In that event and upon that condition only the plaintiff agreed to pay the ten thousand dollars to Vickery and to credit $13,500 on the $50,500 Gibson agreed to pay plaintiff for the property in Findlay, Ohio. As Vickery refused to transfer the stock, it follows that plaintiff has not paid the $10,000, and is not obliged to credit the $13,500 on the $50,500, with the result that plaintiff has paid nobody anything, and Gibson owes

plaintiff $50,500 for the Findlay property, and Gibson can not compel plaintiff to credit the $13,500 on the price ho agreed to pay for it. As this contract could not be enforced against the plaintiff by either Gibson or Vickery, it follows that he can not enforce it against either of them. The plaintiff therefore has failed to show that he is a purchaser of the equity of redemption at all, much more so that he is a *bona fide* purchaser thereof, for value and without notice. He holds it, if indeed it can rightfully be said he holds it at all, subject to all the equities that exist between Gibson and Vickery.

When Engel received the assignment from Gibson of an one-fourth interest in the equity of redemption, he paid nothing for it, but it was simply a security for the $3,000 the balance due of the $4,200, which Gibson owed him for his interest in the land. And when Engel received the assignment of the entire equity of redemption and paid the three hundred and fifty dollars for the extension of the ten thousand dollar note, it is clear that the assignment was intended only as security for the three hundred and fifty dollars and for the $3,000 Gibson owed him, for within three weeks afterwards Engel assigned the equity of redemption to plaintiff at Gibson's direction, and received nothing therefor, at the time, but four days later Gibson returned to Engel the three hundred and fifty dollars, and also paid him $1,000 on account. Whether therefore Engel became the purchaser of the equity of redemption for value when he paid the three hundred and fifty dollars or whether the assignment was a mere security for that sum, is wholly immaterial, because Engel had notice of all the dealings between Gibson and Vickery, and the sale, if it was a sale, of the entire equity of redemption, was rescinded on the 11th of February and Engel received back from Gibson the $350 he had paid for the extension or assignment. Engel therefore was not an innocent purchaser, for value and without notice, and even,

if the plaintiff can recover upon Engel's title, it would not strengthen his position. But the plaintiff can not recover upon the strength of Engel's title, for he did not purchase from Engel. All his dealings were with Gibson, and his contract with Gibson was that Gibson was to cause the equity of redemption to be conveyed to him, which Gibson did by causing Engel to transfer it without any consideration whatever.

The matter resolves itself then into this, that the plaintiff has neither paid anything for this equity of redemption nor bound himself to pay anything for it, except upon a condition precedent which has failed. He has sold certain property in Findlay, Ohio, to Gibson for $50,500, which Gibson must pay for or the property will go back to plaintiff. (Reference to the other features of the Shinkle-Gibson contract is omitted as unnecessary to the determination of this case.) Engel has parted with his claim to the equity of redemption, and has only an unsecured note for $2,000 against Gibson who is insolvent, to show for his one-fourth interest in the land. This reverts the matter to a simple question of equities between Gibson and Vickery, and as they can not be settled in this action, it is not proper or necessary to refer to or discuss them.

The cases relied on by the plaintiff, of which Trust Co. v. Home Lumber Co., 118 Mo. 447, is a fair type, holding that the purchaser of stock in an incorporated company is not bound by any restriction or lien thereon of which he has no notice, are not therefore applicable to this case, except so far as they state the proposition that such a purchaser is bound by all restrictions and liens that the seller or transferer of the stock was bound by and of which the purchaser had lawful notice (Ibid, l. c. 459), and that the purchaser must be an innocent purchaser, for value and without notice or else he will be bound by all restrictions or liens that his transferer was bound by.

In no sense of the term therefore can the plaintiff be

regarded as a *bona fide* purchaser, for value and without notice, and therefore whatever right he has, if any, to the stock is subject to all the equities which may exist between Gibson and Vickery.

## II.

A decree for a specific performance is not an absolute right, but it rests in sound judicial discretion, and such a decree will not be granted if it would result in injustice to either of the parties; in other words, it will not be granted except where it would be equitable to grant it. [Paris v. Haley, 61 Mo. 453; Veth v. Gierth, 92 Mo. 97; Pomeroy v. Fullerton, 131 Mo. 581; Glass v. Rowe, 103 Mo. 513; In re Ferguson's Estate, 124 Mo. 574; Jasper County Electric R'y Co. v. Curtis, 154 Mo. 10.]

It is plain in this case that notwithstanding the partial and subsequent entire assignment of the equity of redemption by Gibson to Engel, it still remains subject to Gibson's directions, even to the extent of an absolute assignment by Engel to plaintiff without any consideration, and when by so doing he lost all security for the debt of $2,000 that Gibson owed him. It is also plain that the plaintiff paid nothing for the transfer to him of the equity of redemption, and can never be made to pay anything therefor, nor can he lose anything, by reason of this transfer, or his deal with Gibson.

This is a case where gross injustice might be done to Vickery if he was compelled to give up and transfer this stock upon being repaid the $10,000 he loaned Gibson and for which this stock was pledged as security, and thereby the stock would pass to third persons, and he would be left with the land, when he had a right to rescind the contract within a year, return the land and keep his stock, all of which he has offered to do, or can be made to do. It is not therefore a proper case for specific performance of contract, at the

instance of this plaintiff, but is eminently a case, where, with all the parties before the court, the equities between them all can be considered and finally adjusted and adjudicated.

The judgment of the circuit court is right and is affirmed. All concur.