EMIL T. HILGEDICK v. E. W. NORTHSTINE, BANK OF WASHINGTON ET AL.; PAUL A. KORMAN, Appellant.

Division One, December 31, 1926.

1. **EVIDENCE: Confidential Relations: Utterances in Presence of Others.** Conversations and remarks between litigants and their respective attorneys in the presence of others, at a meeting held for the purpose of effecting a compromise of pending litigation, are not within the rule of privileged communications between attorney and client.

2. **SPECIFIC PERFORMANCE: Written Contract: Modification: Intent of Parties.** In a suit for the specific performance of a written contract whereby one of the defendants agreed to convey land to plaintiff, and thereafter conveyed a part of it to another defendant (the only appellant), the finding of the trial court that the contract expressed the true intent of the parties thereto will not be disturbed, where the covenanting defendant did not testify and took no appeal from the finding and judgment, and no good reason is disclosed by the record for disturbing it.

3. **CONVEYANCE: Knowledge of Prior Contract: Precedence.** A written contract to convey land does not take precedence over the maker's subsequent warranty deed unless the grantee therein has actual or constructive knowledge of the existence of the written agreement to convey to another at the time he accepts his deed.

4. ———: ———: **Parol Evidence: Deference to Chancellor.** Notwithstanding the recorded instruments do not constitute constructive notice to a defendant in the suit for specific performance that, at the time he accepted a warranty deed conveying to him a certain tract, there was in existence a written contract by which the grantor had agreed to convey said tract to plaintiff, actual knowledge of the existence of such contract may be established by oral testimony; and where there is substantial testimony tending to establish defendant's knowledge, this court will defer to the finding of the chancellor who saw and heard the witnesses and based his finding that defendant did have such knowledge on their oral testimony.

5. **SPECIFIC PERFORMANCE: Land Belonging to Another: No Demurrer: Reversal.** Where one of the defendants (the only appellant) in the suit for the specific performance of a contract to convey land by the other defendant filed no demurrer to the petition and has never urged that the petition did not state a cause of action, but in his separate answer expressly alleged title and possession in himself, and based his claim to title upon a deed from the other defendant conveying to him a part of the land described in the contract with plaintiff and said other defendant, and upon a purchase and acceptance of the deed by him without notice or knowledge of said prior contract, a reversal of the judgment decreeing performance of the contract and vesting title in plaintiff to all the land would not be justified, if that were the whole case made at the trial; but where it clearly

appears that, prior to and independent of the deed by such other defendant to the appellant, the appellant had a substantial title, by long exclusive and adverse possession under color of title, to the tract described in said deed, the judgment cannot stand.

6. ———: ———: **Inequitable Decree.** It is clearly inequitable in a suit for the specific performance of a contract to deprive a third party of rights which are in no sense derived from either party to the contract. Where plaintiff brings suit to enforce a contract by which one of the defendants agreed to convey to him certain lands, the decree cannot deprive another defendant, who was not a party to the contract, of a part of the land to which he had a prior independent title and of which he had for more than ten years been in exclusive possession, although, after the contract was made and with notice thereof, he purchased and accepted a deed from said other defendant for the purpose of perfecting his prior claim of title.

7. ———: ———: **Admission in Open Court.** It will not be held, in the suit to enforce a contract to convey land to plaintiff made by another defendant, that appellant in .open court solemnly admitted that said other defendant was the owner of the land claimed by appellant and that such admission "is conclusive and disposes of the necessity of other or additional proof on that question," where it is apparent from the record that appellant's counsel did not intend to make such admission.

8. ———: **Payment of Purchase Money: Obligation of Later Vendee.** The same equity rule which holds the successor of the vendor to be the trustee of the first vendee, as to the lands, makes the first vendee the trustee of the second vendee, as to the purchase money, in so far as the second vendee may be required to perform the contract of the vendor.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 623, p. 727, n. 99; 4 C. J., Section 2612, p. 703, n. 72; Section 2853, p. 879, n. 83; Section 2868, p. 898, n. 86, 87. **Specific Performance,** 36 Cyc., p. 548, n. 4; p. 551, n. 64; p. 619, n. 2; p. 761, n. 68; p. 763, n. 71; p. 784, n. 15 New; p. 789, n. 41. **Trial,** 38 Cyc., p. 1327, n. 49. **Vendor and Purchaser,** 39 Cyc., p. 1775, n. 58; p. 1783, n. 4. **Witnesses,** 40 Cyc., p. 2377, n. 95; p. 2378, n. 99, 1.

Appeal from Franklin Circuit Court.—*Hon. Ransom A. Breuer,* Judge.

REVERSED AND REMANDED.

*John W. Booth* and *Fred H. Kasmann* for appellant.

(1) He who is in the actual possession of land claiming the fee is presumed to have the fee until the contrary appears, and may maintain an action for an invasion of his possession against any one but him who, in fact, has the legal right of possession. Newell on Ejectment, p. 432, sec. 10; 3 Story's Eq. Juris (Redfield's Ed.) p. 114; Bispham's Principles of Equity (8 Ed.) sec. 268, pp. 420, 421; Kerr on Fraud and Mistake (Bump's American Ed.) p. 244. (2) Actual notice is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen  or impair the conclusion. If a man has actual notice of circumstances sufficient to put a man of ordinary prudence on inquiry as to a particular point, the knowledge which he might by the exercise of reasonable diligence

have obtained will be imputed to him by a court of equity; but thence must appear to be, in the nature of the case, such a connection between the fact discovered and the further fact to be discovered, that the inquiry suggested would, if fairly pursued, result in the discovery. Kerr on Fraud & Mistake (with American notes by Bump), pp. 235 to 238; Bispham's Eq. Principles (8 Ed.), secs. 268, 269, pp. 416, 422; Story's Eq. Juris. (Redfield's Ed.) secs. 138, 139, 140, 141, 152, 161, 162, 168. (3) The court will take judicial notice of the fact that in the United States system of land surveys, lines of townships, ranges, sections, quarters of sections, and smaller subdivisions of land, are not, save in rare instances, natural, visible lines recognizable on mere inspection thereof. Campbell v. Wood, 116 Mo. 196. (4) A decree for specific performance must correspond with the allegations of the petition, as well as with the proof. Story's Eq. Juris. (Redfield Ed.) sec. 770b; Bispham's Principles of Equity (8 Ed.), secs. 371, 376, 377; Berberet v. Myers, 240 Mo. 77; Kirby v. Balke, 306 Mo. 109; Schneider v. Batlon, 175 Mo. 723; McConnell v. Deal, 296 Mo. 291; Kanan v. Hogan, 307 Mo. 269; Abbott v. Dunivin, 34 Mo. 148. (5) An attorney is not (without his client's consent), competent to testify to facts, directly, communicated to him by the client in the course of the employment. The disqualification is not dependent on any injunction of secrecy by the client. It is not necessary that the client should even know the rule against disclosures by an attorney. 48 Cyc. 2261 to 2372; Sweet v. Owens, 109 Mo. 1; Cross v. Riggins, 50 Mo. 335. (6) The findings and the final decree of the court are not supported by and are against the pleadings and evidence. (7) On the pleadings and evidence the trial court should have found the issues for appellant, and, by its final decree should have dismissed this suit at the cost of respondent, for want of equity.

*James Booth* and *Virginia J. Booth* for respondent.

(1) The solemn admission in open court by appellant's counsel during the course of the trial that Northstine was the owner of the land in suit was and is conclusive and disposed of the necessity of other or additional proof on that question. 22 C. J. sec. 469, p. 394, note 19; Land Lumber Co. v. Chrisman, 204 Mo. 379; Ace Min. & Mill. Co. v. Mining Co., 247 S. W. 175; Given v. Burton, 183 S. W. 619; State v. Ray, 225 S. W. 974. (2) The burden was on appellant to prove the payment to Northstine of a valuable consideration for said strip of land, and that appellant had no notice of plaintiff's contract with Northstine at the time of such payment, if there was such payment. Young v. Schofield, 132 Mo. 650; Holdsworth v. Shannon, 113 Mo. 525; Insurance Co. v. Smith, 117 Mo. 294; McDaniel v. Sprick, 249 S. W. 616; Matthews v. O'Donnell, 289 Mo. 235.

(3) The appellant having been informed by Northstine, about December 1, 1919, of Northstine's contract to sell to plaintiff, he was not an innocent purchaser. Beach v. Linn, 252 S. W. 441. (4) The appellant having purchased from Northstine with notice of plaintiff's rights, or having failed to pay a valuable consideration before acquiring notice, took and held the land as constructive trustee for plaintiff, and it is no defense for him to say that he was in the adverse possession of the land in suit at the time of the commencement of this action. 36 Cyc. 761; Waddington v. Lane, 202 Mo. 417. (5) The testimony of witnesses, even appellant's attorneys, as to conversations between appellant and Northstine in the presence and hearing of others was competent. An attorney is qualified to testify to statements made by his client in the presence of a third person. Canty v. Halpin, 242 S. W. 96; 40 Cyc. 2377. (6) The scrivener acted for Northstine in writing the contract and a mere mistake on his part, even if made, would be purely unilateral and afford no ground or basis for reformation. Dougherty v. Dougherty, 204 Mo. 228: Robinson v. Korns, 250 Mo. 674; 13 C. J. sec. 255, p. 373, n. 51. (7) The testimony as to the facts was largely oral and conflicting. The trial court had the witnesses before it, could observe their demeanor and appearance while testifying. This court has nothing but the cold printed record before it, and under these circumstances the authorities all agree that deference to the finding below should be shown by this court. Williams v. Williams, 259 Mo. 242. (8) The finding and decree of the chancellor was equitable, fair and just, for the right party, and should be affirmed.

ATWOOD, J.—This is a suit for specific performance of a written contract for conveyance of real estate situated in Franklin County, Missouri, and for proper equitable relief. Appellant was one of the defendants against whom judgment was rendered and the other defendants, E. W. Northstine and Bank of Washington, have not appealed.

The petition alleges that on September 20, 1919, plaintiff, Emil T. Hilgedick, and defendant E. W. Northstine, entered into a written contract by which for a valuable consideration defendant Northstine promised and agreed to sell and convey by warranty deed to plaintiff Hilgedick the northwest quarter of Section 35, Township 45, Range 2 west of the Fifth Principal Meridian, except a strip of land of uniform width off of the north end thereof containing forty acres; also the southwest fractional quarter of Section 35; Township 45, Range 2 west of the Fifth Principal Meridian, containing 30 acres more or less, with all accretions thereto; the lands to be conveyed containing 150 acres more or less according to a survey thereof made by Jesse F. Ekey, by Edgar Rapp, deputy, December 16, 1918, and

of record in the surveyor's records of Franklin County in volume 8, page ——; that the purchase money was paid and to be paid as provided in said contract, and plaintiff was to have possession of said premises on and after December 1, 1919; that afterwards defendant Northstine for a valuable consideration, assigned, transferred, sold and delivered said written contract to defendant Bank of Washington; that on December 24, 1919, defendant Northstine, joined by his wife therein, duly executed and delivered to defendant Korman a warranty deed conveying to said Korman, for the purported consideration of $3021.75, certain lands, aggregating 123.90 acres, including a strip 1.47 chains wide off of the east side of the real estate described in his said contract with plaintiff. The petition further states that plaintiff has duly performed all the conditions of said written contract by him to be performed, but that defendant Northstine has failed and refused and still fails and refuses to convey to plaintiff the real estate mentioned and described in said written contract; that plaintiff is able, ready and willing to comply with and perform all the conditions of said written contract required of him; and that defendants, and especially defendant Korman, is in possession of all the premises so conveyed to him by defendant Northstine. Plaintiff's prayer was "for a judgment and decree compelling defendants to specifically perform said written contract between plaintiff and defendant Northstine and by its judgment and decree to divest from defendants all title to the real estate mentioned and described in said written contract between plaintiff and defendant Northstine and vest the same in plaintiff upon such terms as to this court may seem equitable, just and proper; to compel defendants to restore and deliver up to plaintiff possession of all that part of said real estate so sold and conveyed to defendant Korman by defendant Northstine and wife, as aforesaid, and that plaintiff have judgment against defendants for his costs," etc.

Defendant Northstine filed separate answer, in which he admitted the execution and assignment of said written contract, and the execution and delivery of said warranty deed to Korman; denied that he had failed and refused to convey to plaintiff the real estate described in said petition, and denied that he had possession of the premises sold to him by defendant Korman; alleged that at the time of said assignment he and his wife duly executed and delivered to plaintiff, in pursuance of his said written contract, their certain warranty deed for the consideration expressed in said contract, conveying to plaintiff all the real estate particularly described in said written contract except a strip of ground of a uniform width of 1 chain and 47 links off of the east side thereof; alleged mistake of the scrivener in not describing the land in said contract as it was subsequently described in said deed to plaintiff; and prayed for decree directing

316 Mo.—22.

and compelling plaintiff to join with defendant in executing a new and reformed contract properly describing said premises.

Defendant Korman filed separate amended answer, in which he admitted the execution and assignment of said written contract, and the execution and delivery of deed from defendant Northstine and wife to him on or about December 24, 1919. Further answering, this defendant alleged actual possession in him of the premises so conveyed to him long prior to the time of the making of said contract and ever since, and plaintiff's actual knowledge of his claims thereto adverse to Northstine, and of pending negotiations between this defendant and Northstine looking to a conveyance to this defendant of Northstine's adverse claim and title to said land; denied that this defendant at or prior to the execution and delivery of Northstine's said deed to him ever had any notice of the contract described in said petition; alleged that this defendant purchased said real estate and paid for same for the purpose of perfecting his prior claim of title thereto; and prayed that plaintiff's petition be dismissed as to defendant Korman.

The court found all the issues in favor of plaintiff and concluded its judgment, order and decree as follows:

"That the said conveyance from said Northstine and wife to said Korman in so far as the same undertakes to convey to said Korman a part of the lands theretofore contracted to be sold and conveyed by defendant Northstine to plaintiff is a cloud upon plaintiff's title, and the same is hereby ordered and adjudged and decreed to be and is set aside and for naught held in so far as the same purports to convey lands theretofore contracted to be conveyed by defendant Northstine to plaintiff; . . .

"And it is further ordered, adjudged and decreed by the court that defendant Northstine be required and compelled to specifically perform said written contract between plaintiff and defendant Northstine, and that the title to said real estate so mentioned and described in said written contract last aforesaid be and is hereby divested from defendants and vested in plaintiffs, and that plaintiff recover of and from defendant Korman possession of all of that part of said real estate so purported to be sold and conveyed by said Northstine and wife to defendant Korman which had theretofore been contracted to be sold by defendant Northstine to plaintiff and that plaintiff have restitution thereof."

The land in dispute is 41.37 chains by 1.47 chains, containing about six acres, the total value of which, together with improvements located thereon, is not disclosed by the record. As the case stands we shall concern ourselves with the record only as it relates to the issues made between plaintiff and defendant Korman.

I. Appellant assigns as error the action of the trial court in admitting, over appellant's objections and exceptions, certain testimony
of witnesses Roehrig and Huckriede as to a conversation or exchange of remarks between defendants

**Confidential Communications.** Northstine and Korman at the Peers Schoolhouse meeting held about December 1, 1919, these witnesses being attorneys for defendant Korman and others present at the time. Litigation as to the title of this and other lands was then in progress and cases arising therefrom had reached this court on appeal. This meeting was attended by litigants and their counsel for the purpose of effecting a compromise of the cases then pending, and Northstine and Korman were among those present. The conversation or remarks testified to were not addressed to counsel, but were reported as having been uttered by Northstine and Korman publicly and in the presence and hearing of others who also testified thereto. Conversations or transactions between a client and a third person in the presence of the attorney are not within the rule of privileged communications between attorney and client, and the court did not err in admitting this testimony. [40 Cyc. 2378; Canty v. Halpin, 242 S. W. l. c. 96; Williams v. Sodini, 267 S. W. (Mo. App.) l. c. 83.]

Nor, after a careful scrutiny of all the testimony of these witnesses, do we find that in any instance where proper objection was made and exception taken either of these witnesses improperly testified to anything that came to their knowledge by reason of the confidential relation existing between attorney and client.

II. In several subsequent assignments appellant complains of the court's action in finding that the written contract between plaintiff
and defendant Northstine expressed the true intent of

**Modification of Written Contract.** the parties thereto. Northstine did not testify in the case and took no appeal from the court's finding and judgment therein. Our study of the whole record fails to disclose any good reason for disturbing this finding of the trial court.

III. We shall not consider the first ground stated in defendant Korman's motion for a new trial, namely, that "said findings and decree as against said Korman, in so far as said Korman is found
and decreed to have bought and taken the conveyance of

**Knowledge of Contract to Convey to Another.** the land in said petition alleged to have been conveyed to him by E. W. Northstine and wife, with knowledge or notice of the making and execution, or of the making, or of the execution of the written contract between said Northstine and said Hilgedick in the petition herein alleged, are against the evidence in said action."

We do not know of any theory upon which plaintiff's written contract with Northstine should take precedence over appellant's warranty deed from Northstine unless it be that appellant had actual or constructive knowledge of the existence of such written contract at the time he accepted his deed from Northstine. The petition does not allege such knowledge on the part of defendant Korman, and concludes with a prayer, not that the deed to Korman be set aside, but that title to the land in dispute be vested in plaintiff "upon such terms as to this court may seem equitable, just and proper." Korman's answer, however, expressly states that he had no such knowledge, and while plaintiff filed no reply, the case was tried by both sides as though appellant's knowledge or lack of knowledge of the existence of the Northstine-Hilgedick contract at the time he accepted the warranty deed from Northstine was an issue between Hilgedick and Korman, and evidence was offered *pro* and *con.* At the conclusion of the whole case the court not only found "all of the issues in favor of plaintiff," but made a finding of fact that at the time of the execution and delivery of the conveyance by defendant Northstine and wife to defendant Korman and prior thereto "defendant Korman had actual full and complete knowledge and notice of all matters and things in plaintiff's petition alleged, and had actual notice of the making and execution of said written contract by defendant Northstine to and with the plaintiff."

Now what is the evidence relied upon to sustain the above finding of fact?

The evidence shows that the written contract between plaintiff and defendant Northstine was dated September 29, 1919, delivered October 1, 1919, and recorded August 6, 1920. The date of its assignment to the Bank of Washington does not appear, but the first indication we find in the record that this bank was holding this contract was when plaintiff made principal and interest payments to it on or about September 29, 1920. A warranty deed from Northstine and wife to plaintiff, purporting to convey all the land described in said written contract except the strip here in dispute and bearing date of January 20, 1920, was delivered to the Bank of Washington with the assignment of the contract for delivery to plaintiff upon his final compliance with said written contract. The warranty deed from Northstine and wife to Korman purporting to convey the tract in dispute along with other lands bears date of December 24, 1919, was delivered to Korman about two weeks later, and was filed for record in the office of the Recorder of Deeds of Franklin County, January 27, 1920. Plaintiff's contract was not recorded until August 6, 1920, and this suit was not commenced until December 13, 1922. Not only is there no constructive knowledge or notice under the recording act, but the entire record in this case indicates a remarkable indifference

or lack of diligence on the part of plaintiff in asserting his alleged rights as against this defendant.

Counsel for respondent Hilgedick lean heavily upon the testimony as to a conversation or alleged remarks by Northstine and Korman at the Peers Schoolhouse meeting about December 1, 1919. As to these remarks witness Roehrig testified as follows:

"Mr. Northstine was to receive $25,000 from the farmers—or the defendants. Mr. Paul Korman at that meeting protested against closing any arrangements with Mr. Northstine unless he was sure of having conveyed to him a certain strip of land. It was a strip of land lying between the farm that he had contracted to sell to Mr. Hilgedick and Mr. Korman. . . .

"At that meeting at the time of Mr. Korman's protest, said that he couldn't assure a conveyance of this land to Mr. Korman for the reason that he had contracted to sell it to Mr. Emil T. Hilgedick, and that before he could assure Mr. Korman of selling this strip of land he would have to again open negotiations with Mr. Hilgedick, or words to that effect. And thereafter Mr. Northstine and Judge Schaper retired from the room in which the meeting was held, and were gone for some time and then returned. Upon their return Mr. Northstine said to those present that he would settle with those present except Mr. Korman for the sum of $20,000, instead of $25,000, and would make settlement with Mr. Korman separately at some other time."

Witness Hukriede who was also present at this meeting testified as follows:

"The proposition of settlement was made and Mr. Korman objected. If I remember rightly for the reason that to be fair to him he should have some land that he described if I remember correctly lying between his land and the land bought by Mr. Hilgedick. . . .

"Mr. Northstine made the statement that he couldn't include this in the conveyance, because he had agreed to or contracted, I don't know which term he used, with Mr. Hilgedick for this land.

"Korman was in the room; it was a small room; any one in the room could hear what was being said. . . .

"I can't remember any conversation between him and Mr. Northstine at that time. At that time I didn't know anything about any contract with Hilgedick, and Northstine didn't there say anything to give the details of it."

Defendant Korman, testifying in his own behalf, said that at this meeting he was contending for a deed from Northstine, not for the strip in dispute, but for the place where he lived, that Northstine never told him anything about having agreed to sell that strip to Hilgedick, and that he didn't know that Northstine had any contract with Hilgedick at all.

Witness Schaper, who was present at the Peers Schoolhouse meeting, testified that there was a difference between Northstine and Korman about this strip of land, but that he did not hear their conversation, or if he did he didn't remember it.

Witness Scholz, who was also present, testified as follows:

"I know E. W. Northstine. At that meeting I heard him make a statement about a contract he had made with Hilgedick; for this reason, the meeting broke up on account of it.

"Q. Well, what you heard Mr. Northstine say? A. Mr. Korman says he wouldn't settle under these conditions unless he could get a certain strip of ground from Mr. Northstine; and Mr. Northstine says, 'I can't do that Paul, I have already contracted it.'

"Q. Did he say who he had contracted it to? A. I didn't hear that.

"Q. And when Northstine told him he couldn't do that, what if anything did Korman say? A. Well, there was no more said."

William Wessel, who was also a witness for plaintiff, testified as follows:

"I was at the meeting at the Peers Schoolhouse that was attended by E. W. Northstine, Mr. Korman, Mr. Hukriede, Mr. Roehrig and others; it was about the first part of December in 1919; they was trying to get a compromise of all these land owners; a kind of general conversation; what I there heard said was: Well, they was talking about a strip of land that is going to have a compromise there, and they was about to pass up this compromise, and Paul says he wanted this strip of land or he didn't care to compromise. So they dingdonged along there for a while and about broke up the meeting, and by and by they got together and Mr. Northstine says he would deed that; he would get the strip of land and would fix it up with the other fellow or to that effect; I didn't hear anything said there about any contract between Northstine and anybody else about this strip of land; there was no names mentioned."

The other circumstance relied upon as showing appellant's knowledge of the existence of the contract was testified to by respondent Hilgedick as follows:

"The first I knew about trouble on the east side, or what started the trouble was on the 12th day of December, 1919, about two o'clock in the afternoon, I was up on the island on the place I had bought and Mr. Korman came by, and stopped and talked to me; he says, 'Mr. Hilgedick, I put a house up on your land.'

"He had went over the line in order to get on the same high bank where my house stood, and he intended to buy a strip of land along the east side of my farm. He would pay me for that because he wanted to get his house on the same high bank my house stood on.

"I told him I didn't know whether I had a right to sell to him, I didn't have the deed. That was on the 12th day of December, 1919, about two o'clock in the afternoon."

Korman denied having had any conversation with Hilgedick except at the time of the Rapp survey which appears to have been made about Christmas, 1919, but Hilgedick's wife testified on rebuttal without objection as follows:

"Q. Mrs. Hilgedick, I will ask you if you remember about the 19th day of December, 1919, at a time when your husband Mr. Hilgedick was engaged in piling wood, the 12th day of December, 1919, if you on that day saw Mr. Hilgedick and Mr. Paul Korman, one of the defendants in this case, engage in conversation with each other? A. Yes sir."

While upon the face of the record before us it does not conclusively appear that Korman was a purchaser with notice of the existence of the contract between Northstine and Hilgedick, yet on this point, as the record stands, we are inclined to defer to the finding of the chancellor who observed the witnesses face to face and heard all the testimony as it was given from the witness stand.

IV. However, upon a consideration of all the facts and circumstances before us we are of the opinion that the decree rendered by the trial court cannot stand. There is substance in appellant's claim that the court erred in ignoring his plea and proof of adverse possession and title in fee independent of Northstine's deed, and decreeing full title and possession in plaintiff. Plaintiff's suit was essentially an equitable proceeding looking to the specific performance of a written contract and plaintiff was entitled only to such relief as the pleadings and the supporting facts and circumstances in evidence would warrant.

**Land Belonging to Another.**

Consistent with the nature of such a proceeding plaintiff did not claim to hold the legal title to the land in controversy. Nor did he plead legal title in any of the defendants, but no demurrer was interposed; in his separate answer defendant Korman expressly alleged possession and title to said tract in himself and he has never urged that the petition failed to state a cause of action. Such circumstances do not justify a reversal. [Tebeau v. Ridge, 261 Mo. l. c. 559.]

But it did appear throughout the trial that prior to and independent of the deed from Northstine to him Korman had a substantial title to and was in the exclusive possession of the tract in dispute. He testified without contradiction that he bought this land from Louis Eckelkamp and received a deed therefor, which was not recorded in Franklin County for the reason that the original title deed was from Warren County and at the time he received his deed the land was not agreed to be Franklin County land. Although the alleged deed from

Eckelkamp to Korman was not in evidence, yet Korman's uncontradicted testimony at the trial of this cause on August 9, 1923, was that he was then and ever since the fall of 1910 he had been in the open, adverse, exclusive and continuous possession of this land and every part thereof under claim of the fee-simple title thereto, and during all this time had maintained a three-strand barbed wire fence on the line which was run by Surveyor Rapp for the deed from Northstine to him in December, 1919. It is nowhere claimed that either plaintiff Hilgedick or defendant Northstine was ever in possession of any part of the tract in question, and the record is replete with evidence not only that Korman was in possession of the tract under claim of title, but that his title, whether possessory or by deed or both, was of sufficient worth to justify the prosecution of his claim to this court, and force a compromise from his adversary upon terms even more advantageous to him than those contemplated by Northstine at the Peers Schoolhouse meeting on December 1, 1919. In other words, while Korman placed no record chain of title in evidence it is nevertheless plain that he had substantial rights in this land which did not come to him through Northstine, and the trial court erred in divesting him of these rights in this proceeding. We say this because it would clearly be inequitable in a suit for the specific performance of a contract to deprive a third party (even though he be a purchaser with notice) of rights which are in no sense derived from either of the parties to the contract. [Henry v. Adkins, 194 S. W. l. c. 267.] Specific performance, being a remedy not of absolute right in the party but of sound discretion in the court, will be denied in any case where such a decree would be inequitable under all the circumstances. [Pomeroy v. Fullerton, 131 Mo. 581, l. c. 592.] The liability for specific performance on the part of a purchaser with notice of an existing contract of sale is but "to the same extent as the vendor would have been liable to do, had he not transferred the legal title." [Pomeroy's Spec. Perf. of Contracts (3 Ed.) sec. 465.] Had Northstine never made a deed to Korman the most that Hilgedick could obtain in a suit against him for specific performance would be a decree for such title as he had and an abatement of the purchase price or damages for the deficiency. [Barthel v. Engle, 261 Mo. l. c. 312; Kirby v. Balke, 306 Mo. l. c. 122.] Although a purchaser with notice is treated as a trustee of the first vendee and will be decreed to convey the land in the same manner as his vendor, yet he is not personally liable on the contract. [2 Story's Eq. Juris. (14 Ed.) sec. 1073.] As trustee of the first vendee he is accountable only for what he has received from the vendor, and specific performance should be required of him only to that extent. The vendor does not transfer his liability on the contract, nor is the right of the vendee to specific

performance enlarged by the fact that a third party accepts a deed from the vendor with notice.

Counsel for respondent Hilgedick seek to avoid the above course of reasoning by assuming in Point I of their brief that appellant's counsel made a "solemn admission in open court that Northstine was the owner of the land in suit," and stating that this "is conclusive and disposed of the necessity of other or additional proof." They do not elaborate. As we read the record this assumption is unwarranted. After the rebuttal testimony was in counsel for plaintiff offered in evidence the record of a patent dated May 6, 1915, from Franklin County, Missouri, purporting to convey this with other land to Elias W. Northstine. Counsel for defendant Korman objected to the admission of this evidence as outside the issues raised by the pleadings. His objection being overruled counsel for Korman thereafter said:

"If Your Honor please: In this matter of title—We didn't understand this to be an issue and so haven't prepared to show Northstine's title, but since this is admitted without regard to the pleadings. We offer in evidence here now a deed from Eugene D. Ming and Laura his wife dated June, 1911, to the land up there on Boeuf Island and accretions thereto—Mr. Northstine's source of title.

"The title passed out of Judge Ming to E. D. Ming anyway, and then E. D. Ming to Northstine."

Apparently the above quotation from the record is defectively punctuated, but it seems clear to us that counsel for Korman intended to make no admission for his client, therein, but referred solely to the action of the court in admitting the Franklin County patent without regard to the pleadings, as he viewed them. Not only is this meaning clear from the language and the immediate context, but any other would be repugnant to this defendant's pleading, proof and entire attitude throughout the trial. All subsequent admissions appear to have been made by counsel for Hilgedick and they of course are not binding on this appellant.

We do not find sufficient information in the record to enable us to reach the error above indicated by reversing and remanding with directions. Consequently, the judgment must be reversed and the cause remanded for a new trial, and it is so ordered. While laches on the part of the plaintiff was neither pleaded in the answer nor urged in this appeal, yet the case made by plaintiff discloses unusual silence and delay in proceeding against this defendant. However, we shall not at this time undertake to discuss these facts and circumstances which may be satisfactorily explained on a retrial of the cause. Furthermore, in this connection it is perhaps not amiss to observe that the same equity rule which holds the successor of the vendor to be the trustee of the first vendee as to the lands, also makes the first vendee the trustee of the second vendee as to the purchase money in so far as

the second vendee may be required to perform the contract of the vendor. [Hagman v. Shaffner, 88 Mo. l. c. 29; Randolph v. Wheeler, 182 Mo. l. c. 157.]

All concur, except *Graves, J.,* absent.