STATE of Missouri, Respondent,

v.

John Allen SCOTT, Appellant.

No. 55063.

Supreme Court of Missouri,
En Banc.

March 14, 1973.

**516**

---

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Theodore A. Jackson, Jackson & Douglas, Attys. at Law, East Moline, Ill., for appellant.

HENLEY, Judge.

■ John Allen Scott (hereinafter defendant) appeals from a judgment sentencing him to death upon his conviction of first degree murder. Sections 559.010 and 559.-030.[1] This court has jurisdiction to dispose of the appeal because the case was pending here properly January 1, 1972, and before the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (June, 1972).

Defendant does not question the sufficiency of the evidence to sustain his conviction. The jury reasonably could find from the evidence that on July 7, 1966, a few minutes before 10 o'clock p. m., defendant and his accomplice, Duane Holmes, both armed with pistols, entered the Rathgeber Pharmacy at 4221 Bayless Avenue in St. Louis county, and, using the weapons, robbed Ernest Rathgeber, owner of the pharmacy, and Larry Bardelmeier, his pharmacist, of money belonging to Rathgeber, in the presence of four witnesses, one of whom, Harry Oebels, an off-duty police officer, was killed by defendant in an exchange of gunfire as defendant and Holmes ran out the front door.

The first point briefed by defendant is that he was denied a speedy trial and was prejudiced thereby in that he was deprived of the opportunity to assist in the preparation of his defense of alibi. The only authority cited by defendant in support of this point (Henry v. Ciccone, Director, 440 F.2d 1052 (8th Cir., 1971)) is not applicable to the facts in this case.

■ The indictment charging defendant with this offense was filed June 19, 1967. Defendant was found in the Illinois state penitentiary at Stateville and extradition to this state was sought and thereafter granted in February, 1968. Sometime thereafter he was returned to Missouri. On May 17, 1968, present counsel for defendant entered his appearance, defendant was arraigned and entered a plea of not guilty, and the case was set for trial for June 24, 1968. The case was not tried on that day. On January 20 and February 4 and 13, 1969, defendant filed seven pre-trial motions, some of which were in part sustained and others overruled on April 17 and 24, 1969, and on the 24th was set for trial for May 5, 1969. Trial began that day. The record shows that on April 24, when several of these motions were ruled, the court found that the case had theretofore been continued at the request of defendant. In these circumstances the sixth amendment to the Constitution of the United States; Article I, § 18(a), Constitution of Missouri, V.A.M.S.; and §§ 545.890 and 545.920, guaranteeing a person under indictment a speedy trial, do not require defendant's discharge. His " * * failure to take affirmative action seeking a speedy trial constitutes a waiver of that right." State v. Harper, 473 S.W.2d 419, 424 [3] (Mo. banc 1971).

■ Defendant asserts, however, that on January 15, 1969, he took affirmative action seeking a trial by filing a motion to dismiss the indictment on the ground that the state had failed diligently to prosecute the action, but that the motion was summarily overruled. The original transcript

---

1. All section references are to Revised Statutes of Missouri, 1969, and V.A.M.S.

on appeal, approved by him, and a supplemental transcript requested by him and containing his pre-trial motions, also approved by him, do not support his assertion.[2] Assuming for the purpose of discussion that the motion was filed and overruled as asserted by him, there is no showing and he does not contend that prior to his motion to dismiss he requested a trial "and that such request was made without success for a reasonable length of time before his right to release has been asserted." State v. Harper, supra, at 424. Nor has defendant shown or attempted to show that the failure to try him before May 5, 1969, has so prejudiced him as to call for his discharge. State v. Endres, 482 S.W.2d 480, 485 [4] (Mo.1972). The point is without merit.

Defendant contends in the second point briefed that "[t]he court erred in failing to grant certain of [his] pre-trial motions and in the entry of [a] nunc pro tunc order [on] April 24, 1969." He makes reference in this point to four of nine pre-trial motions filed, being: (1) motion for production of police reports; (2) motion to suppress in-court identification of defendant; (3) motion to produce documents purportedly bearing his handwriting allegedly examined by a handwriting expert and which the state intends to introduce in evidence; and (4) motion to produce all information in the possession of the state which tends to exonerate or which would lead to the discovery of evidence which would tend to exonerate defendant. His contention that the court erred in entering a nunc pro tunc order on April 24, 1969, overruling motions does not have reference to the motions he

now discusses in his brief. The first two above-mentioned motions were overruled on April 24, but not as part of the so-called nunc pro tunc order; the last two were filed thereafter and any alleged error as to the court's action on the other motions is not presented for review.

Defendant asserts that to deny him the police reports denied him (1) proof of defective and improper identification procedures at a lineup; (2) information in the hands of the state which would prove him to be not guilty; and (3) the use of prior inconsistent statements for purposes of impeachment.

■ Although counsel for defendant was present at the lineup and participated in the trial of this case, he does not now state or attempt to show, nor do we find anything in the record which would tend to indicate, that the lineup identification procedure was possibly improper. The record does not support the assertion that the state had and withheld information that would exonerate defendant, or the implication that prior inconsistent statements which could be used by him for impeachment purposes were made by any witness. Defendant has failed to show any abuse of discretion by the trial court in overruling the motion for production of police reports. State v. Yates, 442 S.W.2d 21, 26–27 (Mo.1969). See also: State v. Coleman, 441 S.W.2d 46, 50 (Mo.1969); State v. Cannon, 465 S.W. 2d 584 (Mo. banc 1971).

Defendant's motion to suppress identification of him in court by witnesses present at the time of the shooting, and other witnesses, is based on the grounds (1) that be-

2. When he raised this point and other points relative to other pre-trial motions in his original brief, the state in its brief called attention to the fact that neither this nor the other motions were in the approved transcript and therefore those points were not properly preserved or presented for review. The file reflects that defendant thereafter secured a 104-page supplemental transcript on appeal containing seven pre-trial motions, approved the transcript, and filed it. Shortly after

the supplemental transcript was filed the case was, by agreement, continued to a later session of this court and the state and defendant were granted leave to file, and filed, supplemental briefs responsive to the issues supported by the supplemental transcript. However, this transcript does not contain the alleged motion to dismiss, nor did the state or the defendant allude to this fact in either their supplemental briefs or their subsequent oral arguments before the court.

fore the trial the police improperly influenced the witnesses' identification of him by showing them only one photograph of a suspect; (2) that photographs of him as the person charged with this crime were published in two St. Louis newspapers and that these witnesses saw these photographs to his prejudice; and (3) that the lineup procedures were unfair and prejudicial to him in that he was placed in a lineup with four other persons whose physical characteristics bore no resemblance to him and were so different that they constituted a suggestion to the witnesses that they should identify him as the killer of Sergeant Oebels. A picture of the five lineup participants and other evidence refute his claim that the lineup procedures were unfair and prejudicial to him.

■ As indicated, a hearing on this motion was held before trial and it was overruled. While there is evidence that some witnesses were shown a single photograph and some saw and read the articles in the newspapers, there is substantial evidence to support the finding that the later in-court identifications were based on what the witnesses saw at the time of the offense and were not the result of the photograph, the newspaper articles and identification, or improper or suggestive lineup procedures. State v. Cannon, 465 S.W.2d 584 (Mo. banc 1971); State v. Moore, 435 S.W.2d 8, 13 (Mo. banc 1968); State v. Balle, 442 S.W.2d 35 (Mo.1969).

■ Defendant's motions, above-mentioned, to produce documents bearing his purported signature and to produce any information held by the state which would tend to absolve him of the crime charged were filed April 25, 1969, the day after the court had ruled on seven of his pretrial motions and less than ten days before the date for which the case had been last set for trial. In his motion to produce documents bearing his signature he asked that these be furnished him not less than 45 days before trial. The court overruled these motions on April 29, finding that defendant had known since April 9 that the state would offer the testimony of a named and known handwriting expert and could have presented the motion to produce documents before or at the same time the other motions were presented and could have taken the deposition of the handwriting expert, but failed to do so; that the motion was not timely filed, but was filed for dilatory purposes. Later, at trial, documents identified as bearing defendant's handwriting and testimony of the expert witness were received in evidence without substantial objection. In these circumstances, we cannot say that the court abused its discretion in finding that the motion to produce documents was filed for dilatory purposes only. Rule 25.06(b), (c), V.A.M.R. While an accused would be entitled to see and examine questioned documents if requested by motion timely filed and diligently pursued, we hold that in this case the court did not err in overruling defendant's motion.

■ Defendant's motion to produce information which would absolve him of guilt sought "all information of whatever form, source, or nature which tends to exculpate the defendant, either through * * * indication of innocence or * * * potential impeachment of * * * [a] witness * * * and all information which may be * * * of benefit * * * [to defendant]." As stated by this court in State v. Sweazea, 460 S.W.2d 614, 617 (Mo. 1970), " * * * the motion was too broad and sweeping to be sustained under the present state of the Missouri law on discovery in criminal cases * * *." See also State v. Coleman, 441 S.W.2d 46, 51 (Mo.1969). There is no merit in defendant's second point and it is ruled against him.

Defendant's next point is that the court erred " * * * [1] in failing to suppress the [bullet] alleged to have been removed from defendant, [2] failing to prohibit the testimony of Dr. Venckus and [3] in not suppressing the alleged bullet on account of defective chain of evidence."

In December, 1966, while defendant was a prisoner in the Illinois state penitentiary, Dr. Julius Venckus, the prison physician, performed an operation on defendant's rectum and colon, and, after completing that operation, he removed a bullet from defendant's left buttock at defendant's request, which bullet was shown at trial to have been fired from the pistol of Sergeant Oebels. Defendant filed a motion before trial to suppress this bullet and any testimony by Dr. Venckus regarding it and its removal, stating as one of his grounds therefor that the relationship of physician and patient existed between him and the doctor and for that reason the doctor was incompetent to testify. The motion to suppress was overruled after a hearing at which defendant testified to facts that support his contention that the physician and patient relationship existed. However, he further testified that two or three other inmates who had nothing to do with the operation or removal of the bullet were in the room at the time. Under this state of facts the court could have found that although the relationship of physician-patient existed between Dr. Venckus and defendant, the disqualification of the doctor under § 491.060 [3] from testifying concerning what was found by and disclosed to him was not applicable, because the disclosure was made publicly and freely in the presence of these third persons. For this reason the court did not err in overruling the motion to suppress. State v. Burchett, 302 S.W.2d 9, 17 [9] (Mo.1957); Hilgedick v. Nothstine, 316 Mo. 333, 289 S.W. 939, 941 [1] (1926); 58 Am.Jur. 234, Witnesses, § 404. Cf. State v. Staat, 291 Minn. 394, 192 N.W.2d 192 (1971).

It was shown later at trial that one and possibly all of the inmates present in the room when the bullet was removed were male inmate nurses. For the purpose of ruling this point we will assume that all were nurses and that their presence was required to assist and that they did aid and assist the doctor in the performance of the operation and in the later removal of the bullet. In these circumstances it would not appear that the disclosures made in their presence were made with an intention and willingness on the part of the patient to waive or renounce the secrecy secured by the statute.

However, we have the view that defendant waived the privilege secured by the statute by failing to make timely objection at trial to the doctor's testimony and by later cross-examining the doctor on the same subject. Dr. Venckus testified, without objection, that after performing a rectal operation on defendant he removed a bullet from defendant's left buttock at his request. It was not until later, when asked what he did with the bullet, that the defendant objected to the doctor's testimony. His objection then was " * * * to further medical testimony from this man * * *," because incompetent to testify under the physician-patient privilege. We note too that defendant did not move to strike the prior answers and that the jury be instructed to disregard them. No further medical testimony was elicited from the doctor until defendant made reference to the bullet excision during his cross-examination. Defendant waived the privilege by failing to make a timely objection, State v. Powell, 217 S.W. 35, 37 [3] (Mo.1919), and he reaffirmed the waiver by his later inquiry on cross-examination about matters he contends were privileged.

As to the last portion of this point, i. e., error in not suppressing the bullet, defendant contends the bullet was not admissible because the chain of its custody from his body through the doctor and others to the trial was broken in so many places that it had no probative value as evidence. He asserts in argument that the chain was broken in the beginning in that both Dr. Venckus and Sergeant Bloodworth, an Illinois prison guard stationed at the operating room, were uncertain at

3. Or § 5.1, Chapter 51, Illinois Revised Statutes.

trial in their identification of the bullet as the one removed from defendant. Each of these witnesses stated repeatedly on direct and cross-examination that the bullet at trial was or appeared to be the bullet which they had seen approximately two years before at the Illinois prison. At one time or another each indicated by an answer to a question that he was not as exact or positive in his identification at trial as he could have been two years earlier shortly after removal. But we do not consider that these answers had the effect of destroying the balance of their testimony identifying the bullet and so breaking the chain of custody as to render it inadmissible in evidence.

The court said in State v. Johnson, 286 S.W.2d 787, 791 [4] (Mo.1956): "* * * identification need not always be wholly unqualified in order to make evidence admissible." We hold that the court did not err in admitting the bullet in evidence. Its identification through the chain of custody was sufficient; the weight to be given it was for the jury. State v. Johnson, supra; State v. Coleman, 441 S.W.2d 46, 51 [6, 7] (Mo.1969).

■ Defendant's next point is that the court erred in giving instruction No. 3, because its last paragraph transforms the quality of "doubt" of defendant's guilt sufficient to authorize an acquittal from a "reasonable" doubt to a "substantial" doubt; that this transformation shifts the burden of proof, is uncertain and confusing, and amounts to a comment on the evidence. This paragraph of the instruction may be found in State v. Nueslein, 25 Mo. 111, at 124 (1857). It has been given and has withstood similar attacks from time to time since that year. It was approved as recently as July, 1972, in State v. Davis, 482 S.W.2d 486, 489 [9] (Mo.). See also State v. Key, 411 S.W.2d 100, 103–104 [5] (Mo.1967) and cases there cited; State v. Edwards, 435 S.W.2d 1, 7 [11] (Mo. 1968) and cases there cited. Defendant has not persuaded us that we should now dis-

approve the instruction; hence, we decline to do so.

After his trial and conviction, defendant filed a motion requesting that the court enter an order staying imposition of the sentence assessed by the jury and that he be returned to the Illinois penitentiary. He contends the court erred in overruling this motion, because the extradition agreement between the two states provides that he will be returned to Illinois for completion of a term of imprisonment in that state as soon as the prosecution of the Missouri charge of first degree murder is completed. The extradition agreement does so provide.

■ The question presented appears to be one of first impression in this state. The authorities cited in the briefs of defendant and the state are not directly in point and our research has produced none. The state suggests and we agree and hold that the question of whether he shall be returned to Illinois to complete his sentence in that state or remain in the custody of Missouri authorities to serve the sentence imposed in this case is one in which only the two states are concerned; that he "* * * has no standing to object to the order in which he may be required, as between different sovereignties, to serve any valid sentences against him." Krupnick v. United States, 286 F.2d 45, 46 [2] (8th Cir., 1961). Cf. Newell v. Page, 362 F.2d 538 [2] (10th Cir., 1966). The words of the court in United States ex rel. Spellman v. Murphy, 217 F.2d 247, at 251 (7th Cir., 1954), are apt in this case: "He does not have a choice of keepers." The court did not err in overruling his motion.

Defendant's last point relates to the manner of qualifying the jury in regard to the death penalty and to imposition of that penalty. It is unnecessary that we discuss or rule this point, because the death penalty cannot stand in this case in any event as a result of the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (June, 1972), and other cases.

■ The sole and only punishment for first degree murder in this state is now life imprisonment. Sec. 559.030. The punishment assessed, being unauthorized, is hereby reduced to life imprisonment. State v. Cuckovich, 485 S.W.2d 16, 28 (Mo. banc 1972); State v. Granberry, 484 S.W.2d 295, 301 (Mo. banc 1972); § 547.280; Rule 28.-15, V.A.M.R.

It is further ordered that the clerk of this court forthwith furnish the warden of the state penitentiary and the state department of corrections with certified copies of this judgment and order.

As modified, the judgment is affirmed.

All concur.