**STATE of Missouri, Respondent,**

v.

**Larry Elliot SCHUPP, Appellant.**

**No. 47591.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Aug. 21, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1984.

Patrick J. Eng, Columbia, for appellant.

Thomas I. Osborne, Mexico, for respondent.

CRIST, Judge.

Appeal from a jury conviction for vehicular injury and driving while intoxicated. Defendant was sentenced to one year in the county jail for the vehicular injury conviction, and 6 months in the county jail and a $500 fine for driving while intoxicated. The sentences were to be served consecutively. We affirm.

Defendant, citing the physician-patient privilege conferred by § 491.060(5), RSMo 1978, complains the trial court erred in allowing testimony by two nurses and an Emergency Medical Technician (E.M.T.) on a statement made by defendant and observations made by those witnesses upon defendant's admission to the Audrain County Medical Center, regarding the fact defendant had been drinking. He also challenges the admission of the medical records substantiating their testimony.

Three witnesses observed defendant's car weaving across the road, crossing the center line and driving off the right shoulder many times until defendant's car crossed the center line and struck another car head on. Defendant and the two occupants of the other car were all seriously injured. At the accident scene and in the ambulance which transported the injured to the hospital, several witnesses smelled alcohol on defendant. A state highway patrolman found several empty beer cans on the front and back floorboards of defendant's car.

Defendant and the other two injured were taken to the emergency room of the Audrain County Medical Center. Present in the emergency room were Dr. Welsh, the attending physician, Charge Nurse Rahmeyer (coincidentially, the wife of the highway patrolman), L.P.N. Sue Knipp, E.M.T. Daniel (the technician from the ambulance), the other two victims, and the patrolman. Defendant was placed in the center treatment bay of the main treatment area; one of the other two victims was placed in the first bay and the other victim in a side room. In response to L.P.N. Knipp's questioning, which apparently was not overheard by anyone else, defendant admitted he had been drinking and did not know what had happened.

■ The dispositive question is whether defendant is protected by § 491.060(5) when the statements concerned were made in the presence of third parties unrelated to defendant's treatment. It is possible the center treatment bay where defendant and L.P.N. Knipp were located was sufficiently private so that the third parties, while located in the emergency room area, were not present. However, the party claiming a privilege must show it is applicable, *see Mueller v. Ruddy*, 617 S.W.2d 466, 479 (Mo.App.1981), and defendant did not show that L.P.N. Knipp and he were alone.

The courts generally find communications made in the presence of third persons unrelated to the patient's treatment are not protected by the privilege. However, the communication must be made under such circumstances as to evidence an intention and willingness on the part of the patient to renounce the secrecy by the statute. *State v. Scott*, 491 S.W.2d 514, 519 (Mo. banc 1973).

■ Defendant sustained serious injuries during the accident. He required assistance in being extracted from his car, he was transported to the hospital and treated in the emergency room for injuries to his spine and chest. He was later transferred to a facility in Boone County with a possible head injury.

Thus, there was no error in admitting the testimony of L.P.N. Knipp. *State v. Gates*, 637 S.W.2d 280, 286 (Mo.App.1982). Admission of the medical record did not prejudice defendant because it merely repeated L.P.N. Knipp's testimony. The testimony of Nurse Rahmeyer and EMT Daniel were not objected to a trial. Any privilege that may have attached to their testimony was thus waived. *Scott, supra* 491 S.W.2d at *519.* Points I and II are denied.

■ In defendant's Point Relied On III, he challenges the sufficiency of the evidence on the point of his intoxication. We view the evidence in the light most favorable to the state, together with all favorable inferences drawn therefrom. *State v. Landes*, 661 S.W.2d 596, 598[1] (Mo.App. 1983). Defendant was seen weaving across the road for several miles, driving in such a way he could not be safely passed. He ran onto the shoulder repeatedly. He finally crossed the center line and struck another automobile head on. Defendant smelled of alcohol and had several beer cans in his car. When questioned by Trooper Rahmeyer, defendant was "incoherent" and did not know how the accident occurred, but admitted he had been drinking. The trooper noticed the odor of alcohol on defendant and that defendant's eyes were bloodshot. Without objection, Trooper Rahmeyer testified that in his opinion defendant was intoxicated. This evidence was sufficient. *See e.g. State v. Walker*, 588 S.W.2d 726, 727 (Mo.App.1979).

■ Defendant's fourth point alleges error in the failure of the trial court to declare a mistrial on defendant's motion for the state's indirect inferences to defendant's failure to testify. During his closing statement, the prosecutor told the jury "[e]vidence is a two-way street ... and the state has brought you evidence and the defense can also offer evidence." The prosecutor continued, stating while defendant has no burden to offer any evidence, "he can call witnesses and you can reasonably believe that if there were any mechanical defect, anything wrong with that ..." The prosecutor went on to say:

> If the defendant had had some mechanic investigate and determine that that vehicle had broken tie rods and that that was what was causing that thing to weave on the roadway, you can rest assured that the defense in this case would have brought that—

Finally, at the close of his argument, the prosecutor stated:

> if this defendant and his attorney had any "smoking gun" that they could bring in here and show you that the State didn't have any case, you can rest as-

sured that they would bring it in here ... They are not going to get up here and say, "Hey, we have got a whole lot of good evidence. We could have brought in 25 doctors who said that this defendant was suffering from narcolepsy."

Defendant objected on the ground he had no burden to present evidence. This objection was sustained. The prosecutor replied "[t]he defense can offer evidence to you the same as the state can. There is no burden on the defendant: clearly there is not." Defendant made no further objection and requested no further relief. He claims these statements were indirect references to the fact defendant had neither testified nor proven anything, contrary to *State v. Lindner*, 282 S.W.2d 547, 550 (Mo. 1955).

The prosecutor may argue that the evidence is uncontradicted or that defendant did not offer evidence. *State v. Wynn*, 666 S.W.2d 862, 866 (Mo.App.1984). The prosecutor may not, directly or indirectly, refer to defendant's failure to testify. *State v. Chunn*, 657 S.W.2d 292, 294 (Mo.App. 1983). Defendant seeks to characterize these remarks as indirect references, as references which "cause the jury to infer that the challenged remark was a comment on the accused's failure to testify." *Id.*

■ When viewed in context, the first three remarks defendant objected to, separated only by defendant's objections, clearly argued there was no evidence of any mechanical defect in the car causing the weaving or the wreck. Any reference to a failure to testify here was to an automobile mechanic, not defendant. The last passage by its terms refers to the testimony of "25 doctors," not defendant. Defendant was not called upon, expressly or by implication, to explain anything. There was no improper argument. *Chunn, supra* at 294.

■ Defendant's last point challenges the trial court's refusal to allow him to cross-examine Trooper Rahmeyer on why he left the State Highway Patrol. De-

fendant sought to impeach the trooper with the fact that the trooper resigned while being investigated by the patrol "for some relationship with a female juvenile." This offer of proof was properly denied. The credibility of a witness cannot be attacked by showing a specific act of immorality. *State v. Williams*, 513 S.W.2d 718, 721 (Mo.App.1974). The impeachment sought here can only be characterized as an attempt to show such a specific act of immorality and thus was properly disallowed.

Judgment affirmed.

REINHARD, J., concurs.

DOWD, C.J., concurs in result in separate opinion.

DOWD, Chief Judge, concurring.

I concur in the result reached in the opinion but would hold defendant did not waive the physician-patient privilege conferred by § 491.060(5) RSMo 1978. Generally, the presence of third parties unrelated to the patient's treatment does waive the privilege. *State v. Scott*, 491 S.W.2d 514, 519 (Mo. banc 1973). However, the renunciation must also be intentional and willing. The record reveals defendant was suffering from trauma with serious injuries to the chest, spine, and head. During the course of treatment, he was questioned by a nurse in the emergency room. While there were third parties in the emergency room, I do not believe their mere presence is sufficient to waive the privilege. Such a broad application of the waiver rule is unrealistic and places an unreasonable burden on accident victims to avoid a waiver implied by the presence of third parties even when the evidence reveals said parties failed to hear the communication.

Trauma cases pose unique situations where there are frequently parties unrelated to treatment in the emergency room. Patients must be able to confide in the medical personnel without feeling it necessary to request a private room before doing

so. In this case it is naive to believe defendant who was incoherent at times, consciously waived the privilege.

I would hold Nurse Knipp's testimony inadmissible absent a clear showing defendant was both aware of the parties present in the room and that he intentionally waived the privilege. The physician-patient privilege was enacted to encourage patients to confer with their doctors without fear of disclosure. We should not destroy such a privilege by implication.