## THE STATE v. GROTE, *Appellant.*

### DIVISION TWO.

1.  **Evidence:** HEARSAY.   Evidence on a trial for murder *held* to have been properly excluded, because mere hearsay.

2.  **Manslaughter:** INSTRUCTIONS: MOTION FOR NEW TRIAL. The failure of the court in a trial for murder to instruct on manslaughter cannot be successfully assigned as error on appeal, where the omission was not called to the attention of the court in the motion for a new trial.

3.  ————: ————.  One who has been convicted of manslaughter in the fourth degree cannot complain of the omission to instruct on manslaughter in the third degree.

4.  ————: NEGLIGENT KILLING.  The unintentional killing of a person through the negligent handling of a pistol, in a manner indicating reckless disregard of human life, is manslaughter in the fourth degree.

*Appeal from St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*C. P. & J. D. Johnson* and *Silver & Brown* for appellant.

(1) The court erred in excluding the statements of Mrs. Symons, to defendant at the time she gave him

the letter of deceased, written about February 26 or 27, 1888. Said statements constituted the information on which deceased acted, and as such were admissible in evidence. " Thus, where the question is whether the party acted prudently, wisely or in good faith, the information on which he acted, whether true or false,, is original or material evidence." 1 Greenleaf's Evidence [Red. Ed.] sec. 101. (2) The court committed error in failing to instruct on manslaughter in the third degree under Revised Statutes, 1879, section 1244. *State v. McKinzie*, 102 Mo. 620; *State v. Thomas*, 78 Mo. 326.

*John M. Wood*, Attorney General, for the State.

The record presents no error, and the case was exceptionally well tried. The instruction for manslaughter in the fourth degree was warranted by the defendant's own testimony. *State v. Emery*, 78 Mo. 77.

THOMAS, J.—The defendant was convicted of manslaughter of the fourth degree in the St. Louis criminal court in December, 1888, and was sentenced therefor to imprisonment in the penitentiary for a period of two years, and he appealed.

The evidence shows that the defendant and the deceased, Charles F. Behrens, both quite young men, were first cousins living in adjoining houses in the city of St. Louis, and, until a few months before the killing, associates and warm friends. Some time prior to the homicide, the young men became the suitors of two young ladies, the daughters of a Mrs. Symons. Defendant paid his attentions to Miss Mary and Behrens to Miss Ellen Symons. Defendant prospered in his suit, and soon became engaged to Miss Mary; but trouble arose between Behrens and Miss Ellen, and their courtship ceased. Behrens then got the idea that

defendant was talking about him, and the failure of his suit, and in retaliation told Mrs. Symons and Miss Ellen that defendant was not a fit husband for Miss Mary, as he was a habitue of houses of ill-fame, all of which was told defendant by the ladies. About a week before the homicide Behrens and defendant met, and got into a quarrel which resulted in a fight in which neither one was seriously injured. Behrens continued to make accusations against defendant until finally Mrs. Symons, in an attempt to put a stop to the matter, arranged a meeting of the young men at her house one evening. When they arrived, Mrs. Symons explained to them her purpose in bringing them together, and Behrens at once spoke up and said that if defendant did not quit talking about him he would make him suffer. Defendant retorted that Behrens should be ashamed of carrying such tales to ladies. At this Behrens made the specific charge that defendant at a certain time visited the house of prostitution of one Ada Huntley, and handed him a bible on which to make oath as to the truth or falsity of the charge. Defendant knelt down, and swore upon the bible that the charge was false. He then seated himself, when Behrens accused him of having been in such a house on another occasion, and said, "You have taken one false oath; you cannot take another." Defendant immediately arose from his chair, a pistol shot was heard, and the lamp extinguished. When it was relit defendant had gone, and Behrens, mortally wounded, was lying on the floor, where he died in a few minutes. About five minutes afterwards defendant entered a police station and surrendered himself. The following day, in telling his story to a reporter, he said that he intended to use the pistol to frighten Behrens; that he had no idea of killing him; that he was too much of a coward to kill a man, and that he didn't know how he

had summoned up courage to shoot when he did. Again he said: "I only remember that I drew my pistol and fired without aim, and rushed from the room."

The defendant testified that he put his pistol in his overcoat pocket the night of the homicide, intending to make Behrens take back what he had been saying about him. As to what occurred at the time of the homicide defendant's statement corresponds substantially with the facts as above given, and he added that when he drew his pistol out of his pocket he intended only to frighten Behrens to make him retract what he said about him, and that he had no intention whatever of killing him, but before he pointed the pistol at Behrens, or did anything with it, it went off accidentally. How, he did not know.

The court, by its instructions, authorized the jury to convict the defendant of murder of the second degree, and manslaughter of the fourth degree, or acquit him on the ground of a purely accidental killing.

I. The court committed no error in refusing to permit defendant to prove what Mrs. Symons said to him about a week before the homicide in regard to Behrens' accusations against him. What she said was clearly hearsay. Defendant contends, however, that what she told him constituted information on which he acted, and as such was admissible in evidence to characterize his conduct, and to show that he acted prudently, and in good faith. In the first place defendant was fully advised as to these accusations through other sources, and at the time of the homicide Behrens repeated them to him personally. In the second place the defendant says he took the pistol with him and drew it at the time it was fired, with the intent to make deceased take back what he had said about him. This was an unlawful purpose. The law does not, cannot, sanction the redress of grievances in that way.

Defendant presents no question of self-defense, raises no question of good faith. The only issue presented by the evidence and the instructions of the court, in regard to the crime of which defendant was convicted, was whether he pointed the pistol at deceased. It is evident this testimony could not have thrown any light on that issue.

II.   No complaint is made of the instructions given, but the defendant insists that the court erred in failing to instruct, though not requested to instruct, on manslaughter of the third degree. This point was not presented in the motion for new trial, and it cannot be made in this court for the first time. *State v. Noeninger*, 108 Mo. 166, and cases there cited.

But the defendant cannot be heard to complain of the failure of the court to authorize his conviction of a higher degree of homicide than that of which he was found guilty.   R. S. 1889, sec. 4115; *State v. Wagner*, 78 Mo. 644; *State v. Keeland*, 90 Mo. 337; *State v. Lowe*, 93 Mo. 547.

The defendant was found guilty of manslaughter of the fourth degree, not upon the theory that he shot under the influence of passion, with no intent to kill, but upon the theory that he pointed the pistol at Behrens and the same was discharged, by which the latter was killed.   The unintentional killing of a human being, through the negligent handling of a pistol in a way indicating recklessness incompatible with human life, is manslaughter of the fourth degree. *State v. Emery*, 78 Mo. 77.

And under this view of the law we think the court was extremely liberal in authorizing the jury to acquit defendant on the theory that he did not point the pistol at deceased.   According to his own statement, on the witness stand, he carried the pistol with him and drew it for an unlawful purpose, and having done this,

Miller v. The Mo. Pac. Ry. Co.

its accidental discharge, under any circumstances, would not wholly excuse him. But of course the defendant cannot be heard to complain of this liberality of the court.

The case was well and fairly tried, and we think defendant ought to be thankful that the jury dealt so leniently with him. The judgment is affirmed. All concur.