STATE of Missouri, Respondent,

v.

Lewis R. ELGIN, Appellant.

No. 51011.

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Robert B. Curtis, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert E. B. Bunch, and William J. Gilwee, Kansas City, for appellant.

BOHLING, Special Commissioner.

Lewis R. Elgin was charged with the murder in Jackson County of his wife in the second degree. He was found guilty of manslaughter and sentenced to confinement in the county jail for one year. §§ 559.070, 559.140. Statutory references, unless otherwise indicated, are to RSMo 1959 and V.A. M.S. He questions the indictment, the admission of testimony, the submissibility of the State's case, and the refusal of instructions.

Defendant's motion to quash the indictment, filed just before the trial, was overruled. He now claims error because the indictment was not signed by the prosecuting attorney, although it was signed by an assistant prosecuting attorney of Jackson County. He stresses § 545.040 and State v. Bruce, 1882, 77 Mo. 193.

Said § 545.040 (new § 1798 of RSMo 1879) reads: "Every indictment must be signed by the prosecuting attorney, and when the grand jury return any indictment into the court the judge must examine it, and if the foreman has neglected to endorse it 'a true bill,' with his name signed thereto, or if the prosecuting attorney has not signed it, the court must cause the foreman to endorse or the prosecuting attorney to sign it, as the case may require, in the presence of the jury." See also § 540.250 (§ 1795 of RSMo 1879) on certifying a true bill.

In State v. Bruce, supra, the indictment was not signed by any attorney. The court, stating prosecuting attorneys had not been required to sign indictments prior to said § 1798, also said (77 Mo. 1. c. 193): "This section is imperative with regard to the signature of the prosecuting attorney." And (1. c. 195): "We are satisfied that no paper can be regarded as an indictment without the signature of the prosecuting attorney, and the certificate of the foreman of the grand jury that it is a true bill. Both are required, and neither is a mere formality that may be dispensed with."

In State v. Falbo, Mo., 1960, 333 S.W.2d 279, 284[2, 3], we held an indictment signed by an assistant prosecuting attorney instead of the prosecuting attorney was not invalid. However, in that case the court's attention was not directed to § 545.040 or to the Bruce case. See State v. Swinney, 1887, 25 Mo. App. 347. We think the Falbo case was correctly ruled for several reasons.

The Constitution of 1875, Art. II, § 12, so far as pertinent here, provided: "That no person shall, for felony, be proceeded against criminally otherwise than by indictment * * *." RSMo 1879, p. LVI and RSMo 1899, p. 64. Said § 12 was amended November 6, 1900, to permit prosecutions for felonies and misdemeanors to be by indictment or information, making them "concurrent remedies." Laws 1899, p. 382;

Laws 1905, p. 314; RSMo 1909, p. 48 and Mo.Const.1945, Art. I, § 17 (said § 12 as amended), V.A.M.S.

We have adopted rules (V.A.M.R.) bearing on this subject matter. Consult Mo. Const.1945, Art. V, § 5.

Rule 24.01 provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney, and the indictment shall also be signed by the foreman of the grand jury." Rule 24.16 provides: " * * * An information shall be signed by the prosecuting attorney * * *. * * *"

Rule 36.05 provides: "As used in these Rules, the term * * * 'Prosecuting Attorney' shall include the * *. * associate and assistant prosecuting attorneys, * * * where, by law, they are authorized and permitted to act."

Assistant prosecuting attorneys are authorized for Jackson County and are required to possess the same qualifications and are subject to the same penalties for neglect of duty as the prosecuting attorney. § 56.-150. They "shall attend the grand jury of the county if required so to do by the prosecuting attorney; assist and advise said body; examine witnesses and preserve their testimony," and may sign in their own name informations in criminal cases. §§ 56.180, 56.150 and see §§ 540.130 and 540.140.

Our Rule of Jeofails provides that the proceedings on an indictment or information shall not be stayed or affected "for want of the averment of any matter not necessary to be proved; or, thirteenth, for any other defect or imperfection which does not tend to the prejudice the substantial rights of the defendant upon the merits." Rule 24.11; § 545.030(15, 18); RSMo 1879, § 1821.

In proper instances an information charging the same offense may be substituted for an indictment defective in form or substance. Rule 24.02. Section 545.300 is the predecessor of Rule 24.02 in its application to indictments and was § 3564, RSMo 1929, which appears to have been first enacted by Laws 1925, p. 195, § 3908a.

In view of the changes in the law, an indictment should not now be held a nullity on the ground it is signed by an assistant prosecuting attorney instead of the prosecuting attorney. Compare Rule 24.01 with § 1798, RSMo 1879, now § 545.040. The assistant prosecuting attorney is presumed to have been lawfully in attendance upon the grand jury for the discharge of the prosecuting attorney's official duties. State v. Carey, 318 Mo. 813, 1 S.W.2d 143 [1–3]; State v. Falbo, supra; 67 C.J.S. Officers § 151. The fact that no attorney signed the indictment in the Bruce case distinguishes it from this case. Apparently § 545.040 places the foreman of the grand jury and the prosecuting attorney on the same level with respect to signing indictments. State v. Mertens, 1851, 14 Mo. 94, held the requirement that the foreman certify the indictment over his signature to be a true bill was merely directory, and that it was too late after a defendant was convicted to raise the objection that the indictment had not been properly certified. The Mertens case was approved in State v. Burgess, 1857, 24 Mo. 381, 69 Am.Dec. 433. The Bruce case, notwithstanding the language there used, mentioned the Mertens and Burgess cases but did not overrule them; and they have been followed since. See State v. Majors, Mo., 237 S.W. 486, 488 [1]. The constitutional provision that an accused has the right "to demand the nature and cause of accusation" (Art. I, § 18(a)) requires an indictment or information to state all the essential elements of the offense (State v. Schultz, Mo., 295 S.W. 535 [2]). The ministerial act of a prosecuting attorney in signing an indictment goes to the form in which the charge is presented. The substance of the offense is to be found in the body of the charge. We doubt if in any criminal trial there has been an attempt to prove as part of the merits that the prosecuting attorney signed the indictment. As-

sistant prosecuting attorneys have authority to sign informations (State v. Easley, Mo., 338 S.W.2d 884[1, 2] and citations), and informations may be substituted for defective indictments. It logically follows that the signing of an indictment by an assistant prosecuting attorney does not now cause the indictment to become a nullity.

Under Rule 25.06 (see § 545.220) defenses and objections that can be determined without trial of the general issue are to be raised by motion before trial; and paragraph (e) thereof reads: "Any motion filed under the provisions of these Rules shall specify clearly the defense or grounds of objection relied upon by the defendant and unless it does so it shall be disregarded by the court."

■ Defendant's motion to quash the indictment charged a general violation of § 545.040 and failed to specify whether defendant's objection involved a failure of the foreman of the grand jury to properly sign the indictment, or that the prosecuting attorney had not signed the indictment, or that an assistant prosecuting attorney signed the indictment in lieu of the prosecuting attorney. If in these circumstances the court decided to disregard defendant's motion to quash, we are not disposed to interfere.

■ We perceive of no reason why an information should not be substituted for the indictment in this case. Rule 24.02; § 545.300. The better practice is to obviate questionable defects of this nature by substitution or amendment rather than risk the reversal of a judgment after the time, trouble and expense of a trial and an appeal.

■ Defendant says the State failed to make a case, having failed to establish that the shooting was not accidental.

Several of the State's witnesses (defendant offered no witness) testified defendant admitted he shot his wife, Norma Jean Elgin, with a 12-gauge shotgun on December 8, 1962, stating the shooting was accidental. Mrs. Elgin died that day of the wound received. Defendant's statements were to the effect his wife, after carrying some laundry to their automobile, returned and stood in the doorway of their home waiting for him; that he went to a closet for a shotgun he intended to "hock"; that he did not know the gun was loaded; that he got the gun, threw it in a more or less shooting position; that the gun fired and he had shot his wife. The gun, taken at the scene, had an empty or fired shell in its barrel and two loaded shells in its magazine.

There was testimony from Mr. and Mrs. Cecil Peterson, Mrs. Elgin's parents and with whom the couple had lived for some time, and also from a neighbor at a different location, that defendant had threatened to kill his wife on several occasions.

Two officers of the Kansas City, Missouri, Police Laboratory testified they made many tests trying to make said shotgun misfire, and that they were unable to cause it to fire accidentally.

The jury was not bound by defendant's self-serving statements that the shooting was accidental. State v. Tompkins, Mo., 277 S.W.2d 587, 590[1]. The case was for the jury.

■ The State, over objections, adduced evidence from two of its witnesses, to the effect each had seen an insurance policy on the life of Mrs. Elgin in which defendant was the named beneficiary. The fact that the policy was for $10,000 was also placed before the jury. There was no showing for the admission of this secondary evidence that this policy was unavailable to the State, or that it was in force and effect, or was in the possession of the defendant, or that it had been lost. State v. Tucker, 234 Mo. 554, 137 S.W. 870[1, 2]; State v. Salmon, 216 Mo. 466, 115 S.W. 1106, 1123 [3]. The State, not questioning the rule of evidence involved, would justify the admission of this testimony on the theory it was on a collateral issue immaterial to any issue in the case and not prejudicial to defendant. State v. Hicks, 319 Mo. 28, 3 S.W.

2d 230, 233[9–11]. Evidence tending to show that defendant's motive was to obtain the proceeds of policies of insurance on the life of his wife is on a material issue and admissible if properly presented. 40 C.J.S. Homicide § 235; State v. Hancock, 340 Mo. 918, 104 S.W.2d 241, 246[8]. The testimony should not have been admitted in the circumstances of record. Baker v. Atkins, Mo. App., 258 S.W.2d 16, 20[6] and citations; Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250, 254[3].

The State submitted its case under instruction No. 2 on murder in the second degree and instruction No. 3 on manslaughter. The defense was the shooting was an accident. Defendant alleges error in refusing his instructions Nos. 10 and 11, which he states submitted the converse, respectively, of instructions Nos. 2 and 3. The State's said instructions carried the clause that unless the jury found the facts to be as there stated, the defendant was to be acquitted of the charge therein submitted.

The State discusses defendant's contention only with respect to its instruction submitting manslaughter, defendant not having been convicted of murder in the second degree. See State v. Brookshire, Mo., 353 S.W.2d 681, 689[22], cer. den. 371 U.S. 67, 83 S.Ct. 155, 9 L.Ed.2d 119.

There is no evidence of record that any provocation existed for defendant shooting his wife, and his sole defense of an accidental killing negatives the theory of a justifiable homicide. State v. Dodson, Mo., 29 S.W.2d 60, 62[4]; State v. Foster, Mo., 338 S.W.2d 892, 896; State v. Baker, Mo., 277 S.W.2d 627, 629[3–5].

Defendant's refused instruction No. 11 required the jury to find before convicting defendant of manslaughter, the State had established beyond a reasonable doubt that "defendant * * * intentionally shot and killed the deceased and that the shooting of the deceased was not done accidentally." The State says said instruction was not a converse of the State's manslaughter instruction in that a finding that "defendant * * * intentionally shot and killed the deceased * * *" was not a necessary element of the offense of manslaughter under the evidence in this record. This position, we think, is ordinarily correct; but in this case the State's manslaughter instruction required the jury to find beyond a reasonable doubt that defendant "* * * wilfully, and feloniously did make an assault" upon deceased with a "shotgun * * * and shot and killed" deceased. The instructions, for the purposes of the case, told the jury: " 'Wilfully' means intentionally, not accidentally." The fault is common to each instruction and the State is in no position to take advantage of this claimed error to justify the refusal of defendant's instruction No. 11. Consult State v. Morris, Mo., 307 S.W.2d 667, 674[7]; State v. Brown, Mo., 62 S.W.2d 426[4]; Arnold v. Fisher, Mo. App., 359 S.W.2d 602[8].

Defendant, as we read this record, was guilty of murder in the second degree; or he was guilty of manslaughter in that he was culpably negligent in the killing of his wife without malice and without premeditation; or he should be acquitted, the killing being an accident and excusable. See the definition of manslaughter in § 559.070. The statutes do not define voluntary and involuntary manslaughter but, so far as applicable to this record, they may be distinguished in that the former embraces an intentional killing (40 C.J.S. Homicide § 40) while the latter extends to an unintentional killing while culpably negligent (Id., §§ 55, 62). Consult, among others, State v. Morrison, 104 Mo. 638, 16 S.W. 492; State v. Grote, 109 Mo. 345, 348, 349 (II), 19 S.W. 93; State v. Duncan Mo., 316 S.W.2d 613, 615 [3 et seq.]; State v. Foster, supra; State v. Baker, supra [7, 8].

State v. Boyd, 354 Mo. 1172, 193 S.W.2d 596, 597[1], is to the effect a defendant must formulate and offer a proper converse instruction if he wants one given. See State v. Engberg, Mo., 377 S.W.2d 282, 286[11]. The parties appear agreed that, as stated in the Engberg case: "[T]he rule now

seems established that a defendant is ordinarily entitled to have given a correct instruction submitting the converse of the state's main instruction; but, if the given instructions fully and fairly cover the same subject matter contained in defendant's converse instruction, it is not prejudicial error to refuse the instruction offered. * * * [Citations omitted.]" We need not further develop this issue.

The judgment is reversed and the cause is remanded for error in the admission of testimony.

PER CURIAM:

The foregoing opinion by BOHLING, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.