STATE of Missouri, Respondent,

v.

Melvin COLEMAN, Appellant.

No. 54049.

Supreme Court of Missouri,
Division No. 1.

April 14, 1969.

Motion for Rehearing or to Transfer to Court
En Banc Denied May 12, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Arthur L. Poger, Special Asst. Atty. Gen., Clayton, for respondent.

Alan G. Kimbrell, Clayton, for appellant.

WELBORN, Commissioner.

Appeal from 20-year sentence, imposed under Second Offender Act, after jury verdict of guilty on charge of robbery in the first degree.

Joseph Tucker was the sole attendant at a Clark Service Station at 8341 Olive Street Road, in University City, in the early morning hours on June 29, 1967. At around 3:00 A.M., he was seated on a stool in a rear room of the station, working on an inventory. A person whom he did not see entered the room, struck him in the head with a hard object, and grabbed his head with his left arm. The intruder said, "This is it," and asked where the money was. Tucker replied that the money was in a metal box and a wooden box on nearby shelves. The intruder took the boxes and the $50 each contained. He took a brown envelope, also containing $50, and money from Tucker's shirt pocket. A total of some $233 was taken. A wristwatch was also taken from Tucker. Tucker was warned not to try to look at the intruder and did not see his face. The attendant could observe that the left arm encircling his throat was that of a Negro and the weight which he felt made him aware that the intruder was a large man. Tucker did see a blue and white polka dot bandanna in the intruder's right hand and that the man wore a bluish-green, short-sleeved shirt. When the intruder released Tucker, the attendant was told to stand in the corner. Shortly after the intruder left, Tucker called the University City police.

At 3:27 A.M., when he was eight blocks from the Clark station, Officer Heller received a radio call about the robbery and a minute or two later arrived at the station. He obtained from Tucker such identifying data about the robber as he could and then called the police dispatcher who transmitted the information to all police cars in the City of St. Louis and St. Louis County.

Officer Warren of the University City Police Department was patrolling on Mc-Knight Road, about five blocks south of Olive Street Road, when he heard a radio broadcast report of the Clark station robbery. As he drove north on McKnight toward Olive, he noticed an automobile turn off Elmore Street and start north on Woodson Road. He started toward that vehicle in order to obtain a description of it. As he went toward the automobile, its lights were turned off and it accelerated rapidly, going north on Woodson at a high rate of speed. Warren pursued the fleeing vehicle at speeds of up to 100 miles per hour. He had his red warning signal flashing, and, with the spotlight and headlights of his vehicle, kept the fleeing vehicle in view. After a chase of some six miles on Woodson, the vehicle reached the dead end of Woodson Road at the Interstate 70 access road. The driver attempted to turn to the right at a high speed, but the car spun, did not make the turn and went backward against a chain link fence.

The officer stopped his vehicle about ten feet from the pursued auto. He saw that it was occupied by a Negro male. The occupant got out of the car on the driver's side and the officer placed him under arrest for traffic violation. The driver, the defendant Melvin Coleman, was handcuffed and the officer noticed in his auto a green metal box, similar to that which, according to the police broadcast, had been taken in the robbery. Coleman was then notified that he was under arrest, suspected of robbery. The officer also found money on the floor of the car and a blue and white bandanna handkerchief with a large steel bolt wrapped in it. $73 was found in Coleman's pocket, $50 of it in a brown envelope with the word "Joe" written on it. A total of $227.43 was found on the driver and in the auto. At the police station, a Waltham wristwatch was removed from Coleman's pocket.

Tucker saw Coleman at the station about an hour after the robbery. Not having seen the face of his assailant, he was unable to identify Coleman by sight. However, Tucker did identify the green box

found in the car as the one taken from the station. He also identified the brown envelope, stating that he had written the word "Joe" on it, and that he had placed $50 in currency in the envelope, preparatory to placing it in a floor safe, shortly before the robbery. He also identified the Waltham watch found on Coleman as the one taken from him.

At Coleman's trial on a charge of robbery in the first degree, the state's evidence showed the matters set out above. Coleman testified in his own behalf. His version of the events was as follows: After getting off work at midnight, he went to a restaurant in Gaslight Square where he met a person whom he had met the previous weekend, known to him only as "Lucky." He and Lucky went to a night spot in East St. Louis and then returned to St. Louis. Coleman's automobile was not operating properly. The valve lifters were making a lot of noise. Lucky suggested that driving the car at a high rate of speed might clear up the motor trouble. Coleman was driving out Olive Streed Road, looking for a place where he could "open up" the car, when a tire went flat. They were in the vicinity of Woodson and Olive Street Roads at the time, around 2:00 A.M. Coleman stopped the car, jacked it up and took off the wheel, while Lucky stayed in the car. Coleman rolled the wheel to the Clark station at 8341 Olive Street Road, where he tried to inflate the tire. He stated that he saw Tucker at the station and that Tucker told him the "air wouldn't work." Coleman returned to his car and told Lucky that he would try to flag a ride to a station where he could inflate the tire. He stopped a white station wagon on Olive, driven by a Negro man with a Negro woman as a passenger. The driver took Coleman to a Clark station on Page, where the tire was inflated. His benefactor returned Coleman to his auto and Coleman paid him $2 for his assistance. While Coleman was replacing the wheel, Lucky gave him some money

to repay for expenses of the evening. Coleman paid no attention to the amount and put it in his pocket, with $122 of his own money. When the wheel had been replaced, Coleman started to go north on Woodson and began to accelerate to a speed of 40 to 50 miles an hour. When he did so, he saw the red flashing light of a police car. Because he had previously been convicted of felonies, Coleman attempted to outrun the police car, but at the end of Woodson Road he failed to make a turn and the police car overtook him. According to Coleman, when his auto came to a stop, Lucky opened the door and slid out before the police car arrived and was never seen again by Coleman.

Coleman stated that he had never seen the green box until the officer removed it from the auto. He said that he noticed the watch on the console between the seats and put it in his pocket. He identified the handkerchief as one which had been in his work clothes in the car. He also identified the bolt as one used in his work. The last he had known of those items, they were in his work clothes which he had removed and placed in the rear seat of the auto when he finished work.

Upon consideration of the evidence, the jury found Coleman guilty of robbery in the first degree. The trial court, finding that Coleman, by reason of prior conviction for robbery and rape, was subject to the Second Offender Act, sentenced him to 20 years' imprisonment. This appeal followed.

## MOTION FOR DISCLOSURE AND SUBPOENA DUCES TECUM

Prior to trial, defendant filed a motion, requesting the court to order the prosecuting attorney to disclose to defendant's counsel all evidence material to guilt or punishment in his files, or otherwise known to him, which is or may be favorable to defendant in the trial of this

cause. The motion was overruled. On the day of trial, defendant served a subpoena duces tecum for the production of the police reports of the University City Police Department. On motion of the state, the subpoena was quashed. On this appeal, the appellant assigns the court's ruling on these matters as error. He states that his motions and subpoena were based upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and Giles v. Maryland, 383 U.S. 941, 86 S.Ct. 1194, 16 L.Ed.2d 205.

■ ■ Those cases do stand for the proposition, recognized and applied by the court en banc in State v. Thompson, Mo., 396 S.W.2d 697, "that the suppression of (or failure to disclose) evidence in the possession or control of the prosecution which is favorable to defendant and which might be persuasive to a jury, constitutes such a fundamental unfairness as to invalidate a conviction because violative of due process." Id., 396 S.W.2d 700. However, those decisions do not have the effect of prescribing discovery rules in criminal cases. State v. Reynolds, Mo.Sup., 422 S.W.2d 278, 281. See State v. Miller, 35 Wis.2d 454, 151 N.W.2d 157, 166–169 [14], [15]; United States v. Gleason, U.S.D.C., S.D.N.Y., 265 F.Supp 880, 883, et seq. There being no rule authorizing the attempted discovery here employed, the trial court's denial of the motion was not error. State v. Reynolds, supra; State v. Aubuchon, Mo.Sup., 381 S.W.2d 807, 813–815.

■ When the state moved to quash the subpoena duces tecum for the police reports, no response was made by defense counsel to show the reason for the issuance of the subpoena. Nothing in appellant's brief here sheds any light upon what, if any, proper purpose the subpoena might have served. In such circumstances, we would not, in view of the discretionary nature of the trial court's control of the matter (State ex rel. Phelps v. McQueen, Mo.Sup., 296 S.W.2d 85, 89 [4]), hold the trial court's ruling erroneous.

## DISMISSAL FOR FAILURE TO FIX BOND

On February 13, 1968, before the jury was called, appellant's counsel orally moved for dismissal of the charge on the grounds that, despite repeated requests of the defendant from the time of his arrest on June 29, 1967, no bond was set for him by the magistrate court, and no bond was set until October 31, 1967, when the circuit court, after defendant's arraignment, set bond of $10,000. Appellant contends that he was deprived of his constitutional right to release on bond and that he was thereby prejudiced because during the period, he was unable to search for witnesses who might have assisted him and was unable to earn money to hire counsel of his own choice.

■ The failure of the magistrate to fix bail is no ground for dismissal of the charge. A remedy was available to correct the magistrate's failure to fix bail. See Hickman v. O'Connell, Mo.App., 266 S.W. 2d 9. Such remedy, not dismissal of the charge, was the relief afforded defendant.

## VOIR DIRE

In the course of the voir dire examination of prospective jurors, the following occurred:

"[Defendant's Counsel] And Mr. Stephens, as the defendant sits here do you at this time consider him at this point to be absolutely innocent in this case?

"PANELIST #16: Yes.

"MR. SETTICH [Assistant Prosecuting Attorney]: Just a moment, if Your Honor please. I will object to the form of the question, as to the absolute innocence. I think the test is, can he follow the law as it applies in this case, and there is a presumption of innocence; does not speak of absolute innocence.

"MR. KIMBRELL: If Your Honor please, I don't believe there is any qualification on that presumption.

"THE COURT: Objection sustained."

■ Appellant contends that the court's ruling conveyed to the jury the erroneous idea that the presumption of innocence is a qualified presumption.

Appellant's counsel questioned the panel members at length regarding their acceptance of the state's burden of proof in the case, with frequent reference to the presumption of innocence accorded the defendant. The prosecuting attorney also referred to the presumption in his interrogation of the panel. The court properly instructed on the matter and defendant's counsel gave it considerable attention in his closing argument. In view of the attention focused on the presumption of innocence and the court's proper instruction on the issue, we find no prejudicial error, if there were error at all, in the court's ruling. The suggestion of qualification of the privilege arose from the defendant's response to the prosecutor's objection. The suggestion was not advanced in such a manner as to cause the court's ruling to mislead or misadvise the jury.

Appellant briefed a question of error in the voir dire examination of a former police officer. However, on oral argument, that point was waived and we do not consider it.

## ADMISSION OF EXHIBITS

The admission of State's Exhibit 1, a green metal box, 2, a Waltham wristwatch, 3, a bolt, and 4, a blue bandanna handkerchief, and the refusal to strike the state's testimony as to these items are asserted as error on the grounds that there was no proof of a chain of custody with respect to the items and no proof that they were in the same condition as when they were seized.

We find no merit in the objection. The box, the watch and bolt were identified by the officers who took them from the defendant's automobile or the person of the defendant. The objects were identified by marks placed on them by the officers. The bandanna was identified by the manner in which it was torn. Tucker identified the box and the watch. He stated that the handkerchief was "the exact kind of handkerchief I saw * * * in his right hand."

■ The witness's identification of the objects was sufficient to permit their introduction in evidence. State v. Sprout, Mo.Sup., 365 S.W.2d 572, 575 [5]. The requirement of proof of a chain of custody is not applicable when the objects are positively identified, and the objects themselves, rather than their condition, are the significant factor.

## MONEY AND ENVELOPE

Tucker testified to the taking of a brown envelope containing $50. The officers testified to the finding of an envelope containing money on Coleman. Tucker's identification of the envelope was based in part, on the name "Joe" and the notation "$50" which he had written on it before it had been taken. Objection, based on the best evidence rule, was made to testimony concerning writing on the envelope. Objection was also made to testimony as to the amount of money taken from defendant, again on the basis of the best evidence rule.

■ The best evidence rule requires that to prove a writing, the writing itself must be produced, unless it is not feasible, whenever the purpose is to establish the terms of the writing. 4 Wigmore on Evidence (3rd ed.) § 1178, p. 316. Insofar as the envelope was concerned, the notations about which Tucker testified were significant only from the standpoint of identification of the envelope returned to him. Instead of a distinctive color or shape, the presence of his writing was the basis of Tucker's identification of the envelope. The object of his testimony was not to establish as a relevant matter what had been written on the envelope. In these circumstances the best evidence rule is not applicable.

In State v. Elgin, Mo.Sup., 391 S.W.2d 341, relied upon by appellant, oral testimony

that defendant was the beneficiary on an insurance policy, on his deceased wife, was held inadmissible, under the best evidence rule. However, such evidence bore on the issue of motion of the defendant on a charge of murdering his wife and the object of the testimony was to establish the contents of the non-produced policy. 391 S.W. 2d 344–345 [10–11]. Here, we are concerned only with an issue of identification.

The objection that the money taken from Coleman should have been produced, rather than permitting the officer's testimony on the subject, is without merit. In Kilrain v. State, 166 Tex.Cr.R. 265, 313 S.W.2d 299, 300 [2], a similar contention was raised and answered: "Appellant next contends that the court erred in permitting the officers to testify as to the money which they found because the money itself was the best evidence. In Dixon v. State, 108 Tex.Cr.R. 650, 2 S.W.2d 272, 273, Judge Lattimore said, 'We do not think the man who testifies that he found a horse must produce the horse before the jury before his testimony will be received.'"

## "ALIBI" INSTRUCTION

The appellant attacks the "alibi" instruction given by the court, which began: "The defendant in this case has interposed as a defense what is known as an alibi * * *." Appellant candidly acknowledges the language here employed has been used in instructions repeatedly and held not erroneous. See State v. Pruett, 425 S.W.2d 116, 119 [4]. Appellant asserts, however, that the language used, particularly the word "alibi," has an unfavorable connotation to the accused. He points out that, in State v. Jones, 153 Mo. 457, 55 S.W. 80, 81, decided in 1900, the court found no reason for the use of the Latin terms rather than "plain English words." Whatever might be said for the employment of other terminology, we agree with the court in Jones that the instruction produced no injury, "as it certainly announced a correct principle of law."

Appellant also asserts that the word "interpose" is synonymous with the word "interfere," producing a disparaging comment in the defendant's testimony. He also urges that, in any event, alibi is not a defense, but is a negation of an element of the state's case. The word "interpose" has several meanings. We think its meaning in the context employed in the instruction is clear and does not disparage defendant's testimony. Numerous cases have discussed the nature of a so-called alibi defense. See State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, 706–709; State v. Taylor, 118 Mo. 153, 24 S.W. 449, 451–456. In this case, it was a defense in the sense that the defendant's testimony gave rise to the possibility of his presence elsewhere than at the scene of the crime. Reference to it as a defense could not have been prejudicial in view of the further instruction as to the state's burden of proof of the presence of the defendant at the scene of the offense.

## "FLIGHT" INSTRUCTION

Instruction No. 3 told the jury that if they found that defendant fled from the scene of the offense "with the intent of avoiding arrest for the offense charged," such fact might be considered in passing upon the guilt of the defendant. Appellant attacks this instruction on the grounds that it was not supported by evidence and that it failed to embody defendant's explanation of the alleged flight. Appellant's motion for a new trial attacked the instruction on only the first ground. Therefore, we do not consider the second attack, raised for the first time on this appeal. State v. Butler, Mo.Sup., 310 S.W.2d 952, 956–957 [4, 5]; State v. Lawrence, Mo.Sup., 280 S.W.2d 842, 848 [6].

Insofar as the evidentiary basis for the instruction is concerned, appellant asserts that there was no evidence that the defendant fled from the filling station or that, in view of defendant's explanation, he fled to avoid arrest for the filling station robbery. The essence of the argument is that the evidence showed no flight until the police

vehicle approached defendant's automobile. Defendant argues that he, therefore, did not flee from the scene of the offense. The officers who pursued the defendant's automobile first noticed it when it turned off Elmore Street and started north on Woodson Road. Woodson Road is 2½ blocks west of the service station and Elmore is the first street north of Olive Street Road. Therefore, defendant's auto would have been 3½ blocks from the service station when the officer first saw it. The actual pursuit did not begin until the officer traveled approximately 2 blocks in the direction of defendant's auto, when the defendant's vehicle quickly accelerated, with its lights off.

 This evidence justified the flight instruction. For the purpose of such an instruction, the scene of the offense encompasses the vicinity of the offense. State v. Aubuchon, Mo.Sup., 394 S.W.2d 327, 335 [18–20]; State v. Williams, Mo. Sup., 382 S.W.2d 597, 600 [5,6]. The actual flight need not be traced wholly from the exact scene. The jury could conclude from the evidence that the flight was to avoid arrest for the offense. Defendant's explanation was for the jury to accept or reject.

CLOSING ARGUMENT

In the course of the prosecutor's closing argument, he stated:

"There is one other thing I would like to mention to you, and it is in regard to the adversary system where I am sitting here representing the State. I am not to be taken as the bad guy; I am representing the State of Missouri; I am representing the interests of justice. It is not my job—."

 Defense counsel objected, stating that the argument "implies that the defense attorney is not always representing justice." The objection was overruled. This ruling is alleged as an error here. "The prejudicial nature of the above remarks is so obvious as to be self-evident." We cannot accept this conclusion. Following the court's ruling, the prosecutor alluded to the role of the defense counsel. He in no way disparaged such role and made no effort to cast doubt upon the defense counsel's interest in justice. The prosecutor is charged, by the Code of Ethics (Supreme Court Rule 4.05, V.A.M.R.), with a primary duty of seeing that justice is done. We do not find the argument here of such prejudicial or inflammatory nature as to call for the conclusion that the trial court's ruling on it was erroneous. State v. Harris, Mo. Sup., 351 S.W.2d 713, 716 [1–4].

Appellant asserts error in two portions of the prosecutor's argument in which, according to appellant, the prosecutor either misstated the record or went beyond the record. The first incident was the statement in comparing the testimony of the defendant and the police officer, regarding the finding of the brown envelope with $50 on the defendant. The prosecutor stated:

"So here is what you are doing; you are matching a police officer's testimony, who says 'I found that envelope with fifty dollars ($50) on his person.' The defendant, Melvin Coleman, has got to get rid of that envelope some way; he said, 'It was not on my person.'

"MR. KIMBRELL: I object, Your Honor. This is not the testimony of the defendant. He said he didn't recall it being on his person.

"THE COURT: The jury will recall the evidence and be governed accordingly. This is closing argument.

"You may proceed."

In urging on this appeal that the argument misstated the evidence, appellant's counsel points to the following in the interrogation of defendant:

"Q Now, when he gave you this money did he give you a little brown envelope with it also? A No, sir.

"Q Did you at any time have a brown envelope on you at the time that you were arrested? A I don't know, really; I don't know.

"Q Do you remember the little brown envelope that was shown in the court room? A I remember seeing that envelope; yes.

"Q Did you have one of those envelopes on you?

"A Not that I know of."

■ We find no error in the trial court's action on defendant's objection. In his objection, defendant's counsel stated what he now claims the evidence showed. The trial court did not overrule defendant's objection. It merely directed the jury's attention to the evidence. We find no error in this action.

In the defendant's closing argument, much was made of the absence of fingerprint evidence. In the prosecutor's closing argument, the following occurred:

"MR. SETTICH: Also the box is found in the car. These were never dusted for fingerprints; I thought that was understood all throughout the course—

* * * * * *

"THE COURT: Again, Ladies and Gentlemen, you will recall the evidence; this is closing argument.

"I will save your time; objection overruled."

■ The only testimony about fingerprints came from one police officer. He testified that fingerprint work is done by the detectives of the police force and that he never brought any detective to the filling station to do fingerprint work and that, to his knowledge, the interior or exterior of the station was never dusted for fingerprints. Although the officer's testimony did not refer directly to the green box, it did afford some basis for the prosecuting attorney's "understanding" that no fingerprints were taken. The statement was not so completely lacking in support in the

record as to cause the remark to have been the basis of reversible error. State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 31 [25–28].

We find no error in the proceedings below.

Judgment affirmed.

HOUSER and HIGGINS, CC. concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur except SEILER, J., who votes dubitante as to issue presented by motion for disclosure.